### UNITED STATES GYPSUM CO. v. McMICHAEL et al.

No. 21151. Opinion Filed Nov. 25, 1930.

W. R. Withington and L. P. Oldham, for petitioner.

Fred M. Hammer and M. J. Parmenter, for respondent.

RILEY, J. On February 8, 1930, the State Industrial Commission awarded respondent, Dewey McMichael, the sum of $539.50, and directed future payments at a rate of $17.31 per week until otherwise ordered as against the petitioner, United States Gypsum Company. The award was based upon a finding of an accidental personal injury, said to have been sustained on or about June 27, 1929, when the claimant was employed by the petitioner in the work of loading box cars with gypsum rock. The claimant had been employed by the petitioner intermittently for a period of 16 years. His claim as to the accident is that he inhaled an excessive amount of gypsum dust, which resulted in acute bronchitis preventing him from returning to labor. The physician's report, showing the date of injury, June 28, 1929, contains a diagnosis as pneumoconiosis.

The United States Gypsum Company denied liability on the ground that if claimant was injured, which it denied, said injury was due to an occupational condition and not an accidental injury.

The claimant testified that the box car which he loaded on June 27, 1929, was the worst he had ever loaded as to being dusty, the dust arising from the gypsum rock therein loaded; that his lungs hurt him and he was sick all night with his chest, lungs, and bronchial tubes; that he has not been able to work since. That prior to June 27, 1929, he had complained about the dust from the gypsum affecting his lungs.

Dr. F. R. Buchanan testified, as family physician, that the claimant had prior to June 27th complained of the condition of his lungs, and that he examined claimant in March, 1928, and then found him suffering with chronic bronchitis and diagnosed the condition as pneumoconiosis, an ailment tentatively thought to be due to the kind of work performed, and later, in June, 1929, the ailment was definitely determined to be such occupational disease.

The witness testified that about April 1, 1928, he wrote to the employer suggesting that claimant be transferred to some other department on account of his condition and the influence of dust thereon. The doctor testified that in his opinion the inhaling of

the gypsum dust was the sole cause of the inability of claimant to perform labor since June 28, 1929.

Dr. Moore testified that he examined claimant on October 14th, and on September 1, 1929, and on January 17, 1930, and diagnosed the case as chronic bronchitis. Dr. Moore's testimony is wholly compatible with that of Dr. Buchanan.

Dr. John E. Heatley testified that from examination of an X-ray film he found a fibrosis condition in claimant's lungs as of August 7, 1929, and that it would take a period of more than six months for the condition to develop, and that there was no doubt that the condition of chronic bronchitis existed prior to June 27, 1929.

Dr. McNeil, from an immediate examination of claimant and from examination of X-ray pictures taken in August and December, 1930, testified as to an extensive fibrosis condition which likely was caused by work in the gypsum mill extending over a 16-year period.

Thus we have outlined what we consider the evidence bearing upon the disability of claimant.

The petitioner contends that there was no evidence showing that the claimant sustained an accidental personal injury within the meaning of subdivision 7, of section 7284, C. O. S. 1921, as amended by chapter 61, S. L. 1923, and that where there is no competent evidence of an accidental personal injury, the liability of the employer becomes purely a question of law.

With this contention we agree, for the Oklahoma Workmen's Compensation Act does not apply to occupational diseases, and only to diseases where they are the result of accidental personal injuries.

The evidence before us does not show an accident at all. The legal result is the question as to whether a disease incident to the occupation of a workman is compensable under our law. The compensation laws of the several states differ in this regard, but Oklahoma's law, as amended by chapter 61, S. L. 1923, makes an accidental personal injury a condition precedent for compensation of a workman engaged in hazardous employment. Such a condition excludes injuries arising exclusively from occupational diseases. St. L. Mining & Smelting Co. v. State Indus. Comm., 113 Okla. 179, 241 Pac. 170; Thomas v. Ford Motor Co., 114 Okla. 3, 242 Pac. 765. In the former case, this court held:

"From a review of the compensation acts of other jurisdictions, we find that some of them provide compensation when a workman receives an 'injury' in the course of his employment while others make the foundation of such claim an 'accidental injury' or an 'injury by accident.' The courts, in interpreting the various acts have made an important distinction in the use of the words quoted. Generally it is held where the word 'accident' is used, the workman suffering from occupational diseases is not entitled to compensation, and where the word 'injury' is used, and 'accident' omitted, the workman contracting occupational diseases is entitled to compensation. Bradbury's Workmen's Compensation 317. Under our Act (section 7284, supra), 'injury' is defined to mean 'accidental injury,' and the basis of a claim for compensation must be a casualty occurring without expectation or foresight; occupational diseases, sustained in the course of employment, where from the nature of the work such diseases are likely to be contracted, are excluded as a basis of compensation, for an occupational disease is not an accidental disability. Peru Plow & Wheel Co. v. Indus. Comm., 311 Ill. 216, 142 N. E. 546; Moore v. Service Motor Truck Co., 80 Ind. App. 668, 142 N. E. 19; Taylor v. Swift & Co., 114 Kan. 431, 219 Pac. 516; Van Vleet v. Public Service Co. of New York, 111 Neb. 51, 195 N. W. 467; Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S. W. 972; Meade Fiber Co. v. Starnes, 147 Tenn. 362, 247 S. W. 989."

In the Starnes Case from Tennessee, heretofore cited, that court propounded the question therein presented as follows:

"The question, therefore, is whether the breathing of dust necessarily caused by the very work in which the employee is engaged constitutes an accidental injury."

And answered the query as follows:

"We cannot conceive that the breathing of dust caused to arise necessarily from the very work being performed has in it any element of accident. The material being moved was in the form of dust. It was contained in sacks. The very nature of the material and its container, and the movement thereof, necessarily and not accidentally, caused the dust to float in the air and to be breathed by the workmen. There was no accident in the form of the material, its container or method of movement. The escape of dust in its movement did not result from any fortuitous circumstance; it was necessarily incident thereto. It seems to us that the same reasons which exclude occupational diseases must apply here, and exclude an injury which is produced by the necessities of the occasion, in the absence of any accident entering into the cause of or as producing the particular occasion."

We conclude as did the English court on

appeal in Boderick v. The London County Council (1908) 2 K. B. 807:

"It must be made out and not merely that there is injury arising out of and in the course of employment, but injury by accident arising out of and in the course of employment."

In Lawrence Scotland v. Canadian Cartridge Co., vol. 59, S. Ct. Rep. of Canada 471, it was held:

"The word 'accident' means some unexpected event happening without design and the time of which can be fixed."

While herein the claimant tries to fix the time when he was injured, the evidence discloses he wholly failed to do so, but by his own physician's testimony fixed his ailment as beginning at a time prior to the date upon which he ceased labor. Likewise, Dr. Moore testified that the physical condition of the man was the result of the whole situation. He said, "As I have outlined it, yes, both that afternoon and the previous times he has worked in the mill." Which evidence in its effect is that the man's condition is the result of inhaling irritating dust by a slow, insidious condition, little by little, not assignable to any particular day, but clearly a condition brought about by his occupation, amounting to an occupational disease.

See Miller v. American Steel Wire Co. (Conn.) 97 Atl. 345, as to the course of legislation bearing upon accidental injury as distinguished from occupational diseases, and note the case of Kovaliski v. Collins Co. (Conn.) 128 Atl. 288, subsequent to amendment of the act of that state to provide compensation for occupational diseases. See, also, Wenrich et al. v. Industrial Comm. (Wis.) 196 N. W. 824, in consideration of an act embracing occupational diseases.

The New York act does not include occupational diseases. Richardson v. Greenberg, 176 N. Y. S. 651, wherein it was said in regard to a statute like ours:

"Had it been the intention of the Legislature to include within the meaning of 'injury' or 'personal injury' all diseases of whatever nature, it would not have been necessary expressly to mention, in addition to 'accidental injuries,' such diseases or infection as may naturally and unavoidably result therefrom. This express mention of a disease which is the consequence of injury would seem to exclude all diseases which are not. The particular disease must 'result from 'accidental injury'—that is to say, it must be preceded by such injury, and therefore cannot constitute the injury which it follows."

See, also, Renkel v. Ind. Comm. of Ohio (Ohio St.) 141 N. E. 834; Clinchfield Carbo Coal Corp. v. Kiser (Va.) 124 S. E. 271; Hendrickson v. Continental Fibre Co. (Del.) 136 Atl. 375; Depre v. Pac. Coast Forge Co. (Wash.) 259 Pac. 720; Iwanicki v. St. Ind. Com. (Ore.) 205 Pac. 990; Chop v. Swift & Co. (Kan.) 233 Pac. 800.

The case of Sanders v. Rock Island Coal Mining Co., 138 Okla. 45, 280 Pac. 290, cited in the dissenting opinion, did not concern a disease in any respect. Therein was considered an accidental injury caused by a wrecked car wherein claimant's arm was broken. That case is neither authority nor argument to sustain an award based upon conditions foreseen and known to exist for a long period of time, by and through which diseases appear.

We conclude that, under the law and the evidence, there is nothing in the record to justify a finding of an accidental personal injury. The cause is reversed and remanded, with directions to dismiss the claim presented.

MASON, C. J., and HEFNER, CULLISON, SWINDALL, HUNT, and ANDREWS, JJ., concur. LESTER, V. C. J., and CLARK, J., dissent.

---

CLARK, J. (dissenting). The finding in the majority opinion that there was no testimony supporting the finding of the Industrial Commission is arrived at only by ignoring the testimony of the claimant, respondent herein, and two reputable physicians. The respondent testified as follows:

"A. On the 27th I loaded the car. Q. What kind of car? A. Box car. Q. Regular size? A. Yes; I don't remember the capacity of the car. Q. Is the usual capacity between 1,000 and 100,000 pounds? A. Yes. Q. Did you work regular in the box car? A. I never had this job very long. I had not loaded over three cars. Q. You had loaded three cars prior to June 27th? A. I have loaded flat cars; never loaded very many box cars. Q. How many box cars prior to June 27th, this year? A. I don't think I—well, I don't remember—one or two. Q. How many? A. One or two, but they were not dusty. * * * Q. Were you in the car on the 27th? A. Yes, I had to be, because the boss give me the dickens for not loading right, so I sat there to watch this car—because I loaded them too high. and he did not want to get them overloaded. Q. And before that you had been standing on the outside? A. Yes, and he said to stand on the inside. Q. How long were you in that car? A. Oh, a couple of hours. Q. Is there a machine in there? A. Yes, sir, or it is a belt. Its got a little motor and runs fast

enough to throw the rock from the center of the car to the back. * * * Q. What happened while you were in the car? A. I hurt my lungs, and was sick all night."

The testimony is undisputed that respondent went into the box car for the purpose of loading the same, and it was there that he was injured. The testimony is also undisputed that this is the only box car that the respondent loaded by remaining inside during his services with the Gypsum Company. The evidence further discloses that respondent testified as follows:

"Q. Ever have any trouble like that before? A. No, sir; and I have been there 16 years off and on. Q. Sixteen years in this gypsum plant? A. Yes, sir; with U. S. Gypsum Company. Q. Have you worked since? A. No, sir. Q. Are you able to? A. No, sir; I can't breathe?"

The respondent testified further:

"Q. Had you ever worked in any excessive amount of dust as you witnessed and experienced in the box car prior to being in this box car the date you were overcome and injured? A. No; the dust is not the same in the box car where the machine is running and that cooked stuff, that is different. Q. Was you ever in an excessive amount of dust before as you were on June 27th? A. No, sir."

This clearly shows that it was on this particular day and date that the injury complained of by respondent was received. The evidence is not disputed that he went into the box car a strong, able-bodied man, able to do heavy work, and came out disabled. It is true that the testimony disclosed that the defendant had suffered from bronchitis before this date. There is no testimony that bronchitis is an occupational disease.

Dr. C. D. Moore testified as follows:

"Q. Taking into consideration the history of the case as given you by the claimant of being confined in the box car for at least two hours on a hot summer day and very little air in circulation and full of dust, the air being thick with this dust, and this man became strangled and choked, by being in this box car for two hours, all this time in this dust, what is your opinion as to whether that has anything to do with the condition you have found him suffering with on your various examinations of him? A. Yes, I believe that it has. I believe that it is possible for him to have inhaled enough dust during this period of time in the box car, under conditions stated heretofore, to have injured his lungs, and that it is my belief that this is the exciting cause of his present trouble."

At page 2 of the majority opinion, it is stated:

"The witness testified that about April 1, 1928, he wrote to the employer suggesting that claimant be transferred to some other department on account of his condition and the influence of dust thereon."

This testimony, if true, convicts the petitioners herein, U. S. Gypsum Company, of a deliberate act which resulted in the injury of respondent. The record discloses that after having this information respondent was placed in a box car on a hot, dry day, where he was unaccustomed to work, and he was not accustomed to the amount of dust that was in the box car, and there suffered the injury from which he now complains. Instead of protecting the life and health of its employee, petitioner herein deliberately destroyed the health of its employee, the respondent herein, and now denies all liability.

The majority opinion, at page 4, states:

"While herein the claimant tries to fix the time when he was injured, the evidence discloses he wholly failed to do so, but by his own physician's testimony fixed his ailments as beginning at a time prior to the date upon which he ceased to labor."

This statement does not clearly reflect the record. The testimony of the respondent was that he was an able-bodied, strong man at the time he went into the box car before the accident, and two hours afterward he came out sick and injured with his lungs full of dust, and that since that time he has been disabled. So the time, place, and cause were definitely fixed by the testimony of respondent and other witnesses who knew the facts.

The majority opinion at page 5, states:

"We conclude that under the law and the evidence there is nothing in the record to justify a finding of an accidental personal injury."

The precise question presented here has been passed on by the appellate courts of various states. The general trend of decisions seems to be, the condition or disability is compensable if caused or brought about by an accidental injury, although there existed in the claimant a condition which might be due to the very nature of his work, but which had not disabled him up to the time he received his injury. See the cases of: Fidelity & C. Co. v. Industrial Com., 177 Cal. 614, L. R. A. 1918F, 856, 171 Pac. 429; Mattiessen & H. Zinc Co. v. Industrial Board, 284 Ill. 378, 120 N. E. 249; Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 32 Cal. App. 481, 163 Pac. 255; Eldridge v. Endicott J. & Co., 189 App. Div. 53, 177 N. Y. Supp. 863; Glennon's

Case, 236 Mass. 542, 128 N. E. 942; State ex rel. Jefferson v. District Court, 138 Minn. 334, 164 N. W. 1012; Utilities Coal Co. v. Herr (Ind.) 132 N. E. 262; Amalgamated Sugar Co. v. Industrial Commission, 56 Utah, 80, 189 Pac. 69; General American Tank Car Corp. v. Weirick (Ind.) 133 N. E. 391; Van Vleet v. Public Service Co. (Neb.) 195 N. W. 467; Industrial Commission v. Burchard, 112 Ohio St. 372, 147 N. E. 81; United States Fidelity & Guaranty Co. v. Industrial Commission, 76 Colo. 241, 230 Pac. 624; Blackburn v. Coffeyville Vitrified Brick & Tile Co., 107 Kan. 722, 193 Pac. 351.

The Supreme Court of Illinois in the case of Mattiessen & Hegeler Zinc Co. v. Industrial Board, supra, in the opinion, on page 251 of 120 Northeastern Reporter, said:

"In this case there was evidence from which the Industrial Board was warranted in finding that on October 6, 1914, in the course of the employment of Adrian he contracted arsenical poisoning which resulted in his death. It is true that Adrian had been exposed to practically the same conditions for many years without injury, but it would not be unreasonable to conclude that his immunity was because of the state of his health and his ability to resist the deleterious effect of the gases and fumes over which he worked; but this time his physical condition was such as to make him susceptible to arsenical poisoning in such a degree as to bring on his fatal illness and death. There was sufficient * * * evidence before the board to sustain the finding, and it cannot be disturbed."

We have substantially the same set of facts in the case at bar. Here the respondent had been working in and about the company's plant for a great many years. The condition of his health enabled him to throw off the ill effects, if any, of breathing this gypsum dust. His system had been successful in eliminating the dust until the 27th day of June, 1929, when it was so excessive and dense that his system was unable to take care of it, and hence his resulting disability.

Dr. C. D. Moore testified as follows:

"Q. And you feel if he was affected by the dust at that time, it would have affected him just the same on June 27th? A. If he breathed the same amount of dust and the same kind of dust, I do. Q. If he breathed the same kind of dust over a period of five or six years prior to the 27th of June, 1929, don't you think the constant breathing of that over that period of time every few days would have just as bad an effect upon the physical body as breathing of a large amount of it at one time? A. If he breathed this dust over a period of time, his body would be able to eliminate it in some fashion;

storing it in the lymphatic system in some manner, it is possible he would have less trouble over a long period of time than he would from breathing an excessive amount in a very short period."

On page 943 of 128 N. E., Glennon's Case, supra, the Massachusetts court said:

"There was testimony tending to show that at the time of the injury the employee had pulmonary tuberculosis and that the injury, while not causing this disease, hastened its progress or excited it to a fatal determination. This was enough to warrant a finding against the insurer."

To the same end see Utilities Coal Co. v. Herr, supra, wherein the Supreme Court of Indiana held:

"This is true for the reason that an occurrence which merely hastens an existing disease to its final culmination, will be deemed an accident, within the meaning of the Workmen's Compensation Act (Laws 1915, c. 106), and where such occurrence arises out of and in the course of an employment, compensation will be awarded."

The Indiana court in another case passed upon the identical question here under consideration. On page 392 of the case of General American Tank Car Corp. v. Weirick et al., supra, the court used the following language:

"While it appears that the decedent had been affected by the poisonous gas before, it is apparent that he did not anticipate or design the serious consequences resulting in his death. Yet the evidence abundantly justifies the inference that the immediate cause of the death was the injury by the inhalation of the noxious gas. That the deceased man was diseased at the time of the injury cannot be denied, but such disease had not progressed to the point of disability. He was with substantial regularity performing the duties of his employment up to the time of his injury, and if the disease was thereby accelerated so as to produce death so soon after the injury, the injury must be regarded as the cause of the death. Under such circumstances the dependents are entitled to recover."

In Sanders v. Rock Island Coal Mining Co., 138 Okla. 45, 280 Pac. 290, this court passed upon the identical question involved in this case. The first paragraph of the syllabus reads as follows:

"Where claimant performed manual labor in a hazardous employment and sustained an injury in the course of such employment, resulting in temporary total disability, held, he is entitled to recover compensation during the continuance of such disability, but not in excess of statutory limitations. Further held, the fact that such employee had sustained a prior injury after which he re-

turned to labor and performed labor equal to his fellow workmen, which prior injury was aggravated by the recent injury, the prior injury does not prevent the claimant from recovering compensation for the entire time of his recent disability or until such lesser time as it can be definitely determined that disability caused by such recent injury has ceased."

In the Rock Island Coal Mining Case the claimant had received an injury to his arm, but it was insufficient to disable him from performing manual labor. A subsequent injury to the arm prevented him from performing the usual labor, and this court held that the prior injury did not preclude the claimant from receiving compensation. In this case the prior injury to the arm was admitted. There was no question about it. In the case at bar there is no prior injury admitted, and only the testimony of experts that in their opinions the respondent herein had suffered a prior injury which caused his disability. The Industrial Commission found that the claimant suffered an accidental injury. This was a finding of fact supported by the testimony of the claimant, respondent herein, and the testimony of two reputable physicians whose testimony was not impeached.

The respondent herein was an able-bodied, strong, hard-working man, as shown by the record, before the injury. He came out disabled. Under the Compensation Law he is entitled to compensation. Industry should be required to obey the law and pay the compensation provided by the statutes of Oklahoma.

For the reasons herein stated, the judgment and award of the State Industrial Commission should be sustained.