## FORD MOTOR CO. v. SCRUGGS et al.

No. 22870.    Opinion Filed Jan. 26, 1932.

Everest, McKenzie, Halley & Gibbens, for petitioner.

E. R. Braddock, for respondent.

J. Berry King, Atty. Gen. (by Robert D. Crowe, Asst. Atty. Gen.), for the State Industrial Commission.

KORNEGAY, J.  This is an original proceeding to review an award of the Industrial Commission, which is as follows:

"Now, on this 31st day of August, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held at Oklahoma City, Okla., July 27, 1931, before Inspector William Noble, duly assigned to conduct said hearing, to determine liability and extent of disability, at which hearing the claimant appeared in person and by his attorney, B. R. Braddock, the respondent being represented by A. T. Cole; and the Commission after reviewing the testimony taken at said hearing, and all the records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"1.  That claimant Jesse Scruggs sustained an accidental injury on October 15, 1929, arising out of and in the course of his employment with the respondent, Ford Motor Company, resulting in injury to both feet.

"2.  That at the time of said accidental injury, claimant's average daily wage was $6.

"3.  That by reason of said accidental injury, claimant was not temporarily totally disabled by reason of said injury, and having left the employ of the company soon thereafter, of his own choice and volition.

"4. That as result of said injury the claimant sustained a five per cent. disability to each foot, by reason of the nature of the work he was forced to perform, which consisted of jumping off and on a moving tram to a concrete floor, with heavy loads.

"The Commission is of the opinion: That under section 7290, paragraph 1, C. O. S. 1921, as amended by the Session Laws of 1923, the loss of use of both feet constitutes permanent total disability, for which compensaion is provided under the law, for a period of 500 weeks; that under section 7290, subsection 3, for percentage loss of use of two corresponding members, is provided for by that portion of the number of weeks as provided in the schedule for the loss of one member, which the partial loss of use thereof bears to the total loss of use of such member, or loss of use of the left leg and right foot of ten per cent. each, which would be equivalent to five per cent. loss of use of both feet, and the claimant is entitled, under the law, to compensation for 25 weeks, at the rate of $18 per week, in the total sum of $450.

"It is therefore ordered: By reason of the foregoing facts, that within 15 days the respondent, Ford Motor Company, pay the claimant, Jesse Scruggs, $450, being 5 per cent. permanent loss of use of both feet, or an aggregate of 25 weeks at the rate of $18 per week, as result of the aforementioned accidental injury to his feet.

"It is further ordered: That within 30 days from the date of this order, the respondent file with the Commission receipt or other proper report, evidencing compliance with the terms of this order."

The correctness of the conclusions of the Commission are challenged on the ground that on the admitted facts the troubles of the claimant were not compensable under the Industrial Law of this state.

The first notice of injury was received by the Industrial Commission on October 10, 1930. The date of the accident was given as follows: "October 15, 1929, accident was slowly and imperceptibly caused." The cause of the accident was given as follows: "Nature of claimant's work was such that he was forced to jump down upon concrete floor with heavy loads resulting in a breaking down of the feet." In response to the date of quitting work, the answer is: "Intermittently quitting and returning." In response to likeliness of being disabled more than five days, the answer is "have been." In response to the question "Have you notified your employer of the accident?" the answer is "yes." In response as to the request to the employer to furnish medical attention, the answer is "yes," and also "yes" to the question as to whether it had been done, and the name of the attending physician

was Dr. Noell & Company, 900 West Main street, Oklahoma City.

On July 16, 1931, notice was given of hearing. On July 27, 1931, the hearing was had. Claimant appeared and also attorneys for the present petitioner. Petitioner suggested to the Commission that the compensation should be denied and the case stricken on the face of the claim as not coming within the law, and the request was denied. Thereupon the attorney for the claimant asked leave to amend the claim so as to state "a day certain as the time of the beginning of the date of the injury, about the 15th day of October, 1929." Permission to do this was allowed over the objections of the present petitioner, and it was urged that the claimant did not comply with section 7292, C. O. S. 1921, prescribing a 30-day written notice to be given to the respondent and the Commission, and that an accidental injury reported at this time by motion would deny an opportunity to investigate the claim. The Commission stated that a continuance would be granted to give an opportunity to produce such testimony as they desired. The attorney for the claimant took an exception. Then the attorney for the petitioner asked the court to strike the case by reason of not complying with the requirements, evidently as to notice, and the motion was overruled and the attorney for the petitioner excepted.

The claimant was examined by his attorney. He stated he went to work in May, 1929, and his duties were on the fenders and putting some bolts in them. He worked until October, 1930, and was laid off one time, about a month, and another time some two weeks. He described the character of his work, and he stated that by constant jumping down from the conveyor to the floor he noticed a pain in his heel, and it went to the ball of his foot, and it was about October 15th that he first noticed the condition after he went there in May, 1929. That the layoff came in December, and that during the year that followed he guessed he mentioned to the foreman at least ten times about the condition of his feet, and stated to him that "jumping on the concrete floor was ruining my feet," and he asked for a change of work. On cross-examination, his testimony is as follows:

"By Mr. Cole: Q. Now, you say it was about October 15, 1929, when you first noticed your feet bothering you? A. Yes. Q. You don't know what date that was? A. It was about October 15th. Q. Was there anything unusual, or of an exceptional nature occurred on that day, to lead you to believe you had received an injury? A. Nothing only the sharp pain that started

taking place in my heels. Q. Did you fall down during the day at any time? A. No. Q. Did you have any accident of any kind? A. No. Q. No accidental injury of any kind? A. No. Q. What led you to believe it was about October 15th your feet began to fail you? A. I believe it was six months after I started there. Q. Then your memory just comes within six months of giving it as an exact minute and hour of the day of the month? A. About six months? No, it was within one or two days. Q. Now, you continued right ahead with your work up until—barring the layoffs, your record was continuous from May 21, 1929, to October 1, 1930. A. Yes, sir."

The claimant produced Dr. Chadwick, who specialized in foot troubles, and the doctor said that he found no accidental injury and there was no evidence of an accidental injury. He spoke of the claimant having fallen arches. He was examined and re-examined and he seemed to confirm the idea that there was no accident the further the examination · went. At the suggestion of the court, he said:

"Q. This is what you call an occupational disease? A. Yes. Q. Traumatic in nature? A. Yes."

All of the other witnesses corroborated the claimant on the proposition of there being no accident. The expert for the Ford Company gave as his view that the condition the man's feet were in was the result of arthritis that had been caused by pus forming in the tonsils. The claimant, as stated above, had come into the employ of the company the first time May 21, 1929, and again on the 20th of December, 1929. He evidently made application for re-employment, and he stated then that he was in good health, and Dr. Noell certified he was fit for any work. Again on the 16th of June, 1930, he declared that he was in good health on the medical examination, and there was a certificate of the doctor that he was fit for any work.

Under these conditions, it being admitted by the claimant and corroborated by the facts and other testimony, that there was no accidental injury, we think a finding to the effect that there was an accidental injury suffered is not supported by sufficient competent evidence on which to make an award, under the Workmen's Compensation Law of this state. By virtue of chapter 61, page 119, of the Session Laws of 1923, the power of the Commission to award compensation is limited. Subdivision 7, on page 120 of that act, in defining what injuries are provided for, says:

"7. 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom."

Section 7285, C. O. S. 1921, as amended, in the part thereof applicable hereto, reads as follows:

"Every employer subject to the provisions of this act shall pay, or provide as required by this act, compensation according to the schedules of this article for the disability of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself or of another, or where the injury results directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the State Labor Commissioner, or results directly from the intoxication of the injured employee while on duty; provided, that the provisions of this act shall not apply to any employer if he shall employ less than two workmen; and provided, further, that the liability of any person, firm or corporation having an interest in the subject-matter, employers, and contracting employers, general or intermediate, for compensation under this act, when other than the immediate employer of the injured employee, shall be as follows."

Tested by the explicit provisions of the statute, and especially the part contained in subdivision 7, defining the injuries that compensation is allowed for, and the language in section 7285, "resulting from an accidental personal injury," we are unable to agree with the contention that this man is entitled to compensation, even though he had given written notice of the claim at once and had not made certificates to the petitioner of good health in December, 1929, and June, 1930, to the contrary of what he now claims. While in ordinary cases the failure to give written notice to the employer is generally excused by reason of the payment of compensation or medical attention, the facts are not sufficient in our judgment to warrant our finding an excuse for failure to give notice under the circumstances of this case. It is true that we have held in some cases that necessity for this notice was, by virtue of circumstances, dispensed with, but here the positive statements of the claimant as to good health, rendered in December, 1929, and June, 1930, on natural principles of justice, ought to preclude a finding that the failure to give notice in this case would not result in prejudice. Evidently, ·had the work continued in the Ford plant, the petitioner would not have heard of this acci-

dent, as it is now termed, and probably would not have heard of the occupational disease, which is described by the medical expert introduced by the claimant.

Some authorities are cited in the briefs, especially of the petitioner, showing that in a case of this kind the Workmen's Compensation Law does not warrant a finding against the employer, as well as on the proposition of necessity of notice. Among other cases, is that of Ford Motor Co. v. Hunt, 146 Okla. 105, 293 P. 1038, which deals with the necessity of notice. We think that case is applicable here. As to the necessity of the award being based on an accident, and not on an occupational disease, the case of United States Gypsum Co. v. McMichael, 146 Okla. 74, 293 P. 773, is cited, and also the case of Thomas v. Ford Motor Co., 114 Okla. 3, 242 P. 765, and the case of St. Louis Mining & Smelting Co. v. State Industrial Commission, 113 Okla. 179, 241 P. 170, all of which appear to be applicable and to hold that in a case where the facts are admitted, as in this case, the Commission should not, as a matter of law, award compensation.

The terms "accident" and "accidental," as defined in the ordinary dictionary, could scarcely be said to fit the gradual formation of the condition that is described by all parties in this case. The Thesaurus Dictionary, compiled by Francis A. March, in giving synonymous terms to the word "accident," defines it as being an "event," "change," "disaster." "Accidental" is described as "unexpected."

A resume of the testimony is given in the brief of the claimant, and discussion is had of the proceedings, and some stress is laid on the failure to file an answer, but the Commission treated the matter as though formal answer and everything had been filed. There are some citations as to shifting the burden of proof to show prejudice by reason of failure to give written notice, and quotations are made from the case of Ford Motor Co. v. Ford, 128 Okla. 221, 262 P. 201. We do not think, however, that those cases would affect the result here, as the foundation for the recovery, admittedly, did not exist, as required under our law of compensation. Evidently the claimant in this case thought very little of a liability of his employer to him for an accidental personal injury until he was let out of work, and probably a year after its inception.

Such being our conclusions, the award is reversed and vacated, and the case is remanded to the Industrial Commission, with directions to deny compensation and to dismiss the claim.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.