**IMPERIAL REFINING CO. et al. v. BUCK.**

No. 22587.   Opinion Filed Feb. 2, 1932.

Williams & Williams, for petitioners.

Sigler & Jackson, for respondent.

KORNEGAY, J.   The employee's first notice of injury and claim for compensation in this case, as set forth in the record, does not show its filing date, and it states that the date of the accident was the 8th of October, 1930, and the cause of the accident was, "swelling and soreness of both feet," and that the nature and extent of the injury was "infection from oil," and that he quit work on account of the injury on October 17, 1930. It purports to be signed October 15, 1930. An answer appears to have been filed to it denying the injury as having occurred on October 15, 1930, and denying the liability for disability arising out of the hurt complained of. There appears another employee's first notice of injury, signed at Ardmore on December 22, 1930, showing that the occupation was "attendant on vapor lines," and that the cause of the accident was "feet and legs affected by standing in oil," and the nature and extent of the injury was "partial loss of the use of both feet."

A hearing was had on the 1st of June, 1931, and both sides were represented by counsel, and Dr. Walter Hardy was sworn and testified on behalf of claimant. He recalled the time when claimant came to the sanitarium suffering with his feet. There was "an inflammation on top of the feet around the toes and up to the ankles, quite a little eruption, we call it a dermatitis that means rough skin, irritated, and that has been giving him trouble ever since, it seems to get better and then it will come back." He further testified he could not tell what caused it. That it was possible for it to come from standing in oil, and that possibly standing in the oil was the cause of it. The following is found on page 4 of the record:

"Q. Did you ever treat a case of this kind before, Doctor? A. Yes; a good many times. Generally it is more in the hands than the feet. Q. Brought about by oil poisoning? A. Yes, sir. Q. Does it bring it about in all cases? A. Just occasionally. Q. The mere fact that a man works with oil it wouldn't necessarily bring about that? A. No. It is very rare. I have only seen two or three cases. Q. What's the condition of his feet at this time? A. They are not broken out, they are a lot better than they were. I think if he quit work they would get some better. Q. Will he ever completely recover? A. I think so if that's the cause of it. As soon as he quits work there, that is the end of it. Q. You say it has been seven or eight months you have been treating him, has there been an improvement? A. Yes; it has been a month, I think. Q. From the history of the case, how long would you tell the Commission it would take for him to recover? A. That would be hard for me to estimate. Q. If you think oil is the cause of it, if I remember correctly, he would improve if he quit

work in a month or two or six weeks? A. Some could, it looks to me it ought to be over. Q. In this case he hasn't worked any? A. I don't think he has. Q. And he still complains? A. There is no erosion there, but he still complains of his feet. Q. Can you tell by looking at them has he still? A. No; I wouldn't associate any trouble in there now from oil."

On cross-examination, he stated that, from what Mr. Buck told him, he could not tell when the injury occurred, and it would take a long period of time from the application of oil, and his testimony is as follows: .

"Q. You couldn't tell just when he got that oil on his person—his feet? A. No, sir. Q. In other words, it would be an occupational disease? A. Yes, I would think so. That's the way we look at it. Q. You are not able to determine, I believe you said, just what did cause it? A. No, sir."

On his re-direct examination he reiterated that it was an occupational disease, and it affected some people and did not affect others, and at the suggestion of the attorney for the petitioner here, he said it was a disease as distinguished from an accident.

The claimant testified that he was employed by the petitioners August 10, 1928, and he worked until October 17, 1930, and that Dr. Hardy stopped him from work on the 17th of October, and at that time the claimant had a breaking out on both feet, practically up half way between the knee and hip joints, and that he noticed it just a little about the 8th of October. He defined his work and place of work and his duties. He was cross-examined and stated that he had been in like work from around the 20th of September, 1928, and that he walked in the oil about the same as he did when he discovered the poisoning, and he could not say when the poison entered his system, and he could not say when he got infected. On these admissions and uncontradicted evidence, the award was made. The award is as follows:

"Now, on this 20th day of June, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration pursuant to a hearing held at Ardmore, Okla., on the 1st day of June, 1931, before Commissioner Fred H. Fannin to determine liability and extent of disability; at which hearing, claimant appeared in person and by his attorneys, Sigler & Jackson, the respondent and insurance carrier being represented by J. E. Williams, and the Commission, after reviewing the testimony taken at said hearing, all reports on file, and being otherwise well and sufficiently advised in the premises, finds:

"1. That on and prior to October 8, 1930, claimant, Walter E. Buck, was in the employ of respondent, Imperial Refining Company; that while in the employ and arising out of said employment, claimant received infection in both feet from oil causing a dermatitis of both feet and ankles and irritation of skin on dorsal surface of both feet; that on October 17, 1930, he became temporarily totally disabled from said infection, and is now and has been at all times since October 17, 1930, temporarily totally disabled.

"2. That the average daily wage of claimant at the time of accident was $4.

"The Commission is of the opinion: By reason of the aforesaid facts, that claimant is entitled to compensation from October 17, 1930, less the five-day waiting period to June 17, 1931, which is 34 weeks' compensation, computed at the rate of $15.39 per week, making a total of $523.26, and continued thereafter until otherwise ordered by the Commission, and also such reasonable medical expense as has been incurred by claimant by reason of said injury and continued treatment until otherwise ordered by the Commission.

"It is therefore ordered: That within 15 days from this date, respondent, Imperial Refining Company, or its insurance carrier, U. S. Fidelity & Guaranty Company, pay claimant the sum of $523.26, being compensation at the rate of $15.39 per week, computed from October 17, 1930, less the five-day waiting period, to June 17, 1931, which is 34 weeks, and continuing thereafter weekly at the rate of $15.39 per week until otherwise ordered by the Commission, and also pay such reasonable medical expense as has been incurred and will be incurred by claimant by reason of said injury.

"It is further ordered: That within 30 days from this date, the respondent or insurance carrier herein file with this Commission proper receipt or other report evidencing compliance with the terms of this order."

We have been asked to review the award, and a brief has been filed on behalf of the refining company in which the Commission's findings are complained of, and a resume of the evidence is given, and the position is taken that there was no accidental injury, and that there is no sufficient evidence to support the award. The case of U. S. Gypsum Co. v. McMichael, 146 Okla. 74, 293 P. 773, is cited as having declared the law applicable in this case, and some extracts are made from it. So also is the case of St. Louis Mining & Smelting Co. v. State Industrial Commission, 113 Okla. 179, 241 P. 170, cited, and also Thomas v. Ford Motor Co., 114 Okla. 3, 242 P. 765, is cited, and a discussion is had of the case of Gay v. Hocking Coal Co. (Iowa) 169 N. W. 361, and Industrial Commission of Ohio v. Roth (Ohio) 120 N. E. 172, and the case of Matthiessen & Hegler Zinc Co. v. Industrial Board, 284

Ill. 378, 120 N. E. 249, and the case of Wright v. Used Car Exchange, 223 N. Y. Supp. 245, is discussed and citations made therefrom. That case denied compensation because there was no accidental injury connected with the matter. So also is the case of Iwanicki v. State Industrial Commission, 104 Ore. 650, 205 P. 990, 29 A. L. R. 682, cited and quoted from, in which "idiopathic" origin of the trouble is discussed. Also subsection 7 of section 7284, C. O. S. 1921, is cited.

A brief on behalf of the claimant has been filed. The position is taken that the statute covers occupational disease, as well as accidental injury, and it is claimed that if the contention of the respondent is correct, the last part of subdivision 7 of section 7284, C. O. S. 1921, is useless; that the word "therefrom" refers to employment rather than the proposition of words referring to the nearest antecedent. Several cases are cited that this is a proper rule of construction. The case of Ward v. Beatrice Creamery Co., 104 Okla. 91, 230 P. 874, is quoted from, and also the case of Gay v. Hocking Coal Co., cited above, is referred to, and the case of Industrial Commission of Ohio v. Roth, cited above, and the deduction is drawn that the decision in this case is one that the employer should obey.

We have examined the cases, and the cases from this court wherein the matter has been directly brought into question. The cases of U. S. Gypsum Co. v. McMichael, 146 Okla. 74, 293 P. 773, and St. Louis Mining & Smelting Co. v. Industrial Commission, 113 Okla. 179, 241 P. 170, and Thomas v. Ford Motor Co., 114 Okla. 3, 242 P. 765, appear to be decisive of this case under the statutes regulating the matter in this state.

There are two provisions of the statute on the subject, one being recited in the brief, and another which intensifies the idea of the necessity of an accidental personal injury, which does not appear to be set forth in the brief. They appear to be controlling. The section referred to is carried into C. O. S. 1921, by section 7285, which fixes liability, the language being:

"Every employer subject to the provisions of this act shall pay, or provide, as required by this act, compensation, according to the schedule of this article for the disability of his employees, resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment."

It thus appears that, under our statute, disability resulting from a disease that is not the result of what is ordinarily classed an accident is not compensable. Evidently what was the matter with the claimant was that his skin was irritated by long contact with the vapors and oil arising naturally in the course of the work he was engaged in, and was what was classed by the doctor as an occupational disease, for which compensation is not allowed under the statutes.

Following the above authorities, the award of the Commission, giving compensation to the claimant, must be vacated, and it is accordingly vacated, and the case remanded to the Industrial Commission, with directions to make an entry showing its award set aside, and to dismiss the proceedings.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and RILEY, J., absent.