MACKLANBURG–DUNCAN COMPANY and Aetna Casualty and Surety Company, Plaintiffs in Error,

v.

Thomas H. EDWARDS and State Industrial Commission, Defendants in Error.

No. 37370.

Supreme Court of Oklahoma.

May 21, 1957.

Ross & Holtzendorff, Oklahoma City, for petitioners.

Miskovsky & Miskovsky, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

The sole question at issue in this case is whether or not the evidence is sufficient to support the Industrial Commission's finding that the claimant suffered an "accidental" personal injury on September 15, 1955, as he claimed, and the Commission found; and upon which finding his award was based.

For more than eight years claimant was employed in the carpenter shop of the Petitioner, Macklanburg-Duncan Company's remodeling department. His work consisted largely of rubbing down boards with steel wool. The history and nature of claimant's disability as set forth in the testimony of Dr. C who first examined him on November 17, 1955, is as follows:

"He (claimant) stated that for the last three years he had had a burning and drawing in his right hand. He had been working for the past 8 years for Macklanburg-Duncan. In the process of burnishing and polishing wood for signs, using steel wool, rubbing down approximately 150 signs per day, wearing no gloves. In 1952 he began having a burning and cramping sensation in his right hand. While doing his work for a period of time he was able to relieve the distress by stopping the work and shaking his hand, and then he would return to work. This was not considered to be so significant that he continued his job. This gradually got worse. In fact, six months prior to the time I saw him he saw several doctors. In 1953 Dr. L(———) gave him heat treatment and decided it should be discontinued. Later, he saw Dr. M(———) who gave him some medicine and recommended that he stay off work for a week. Next, he saw Dr. A(———) who X-rayed his hand and was given shots in the arm and some pills to take, and laid off for two weeks and then went back to work. Dr. A(———) saw him again in 1955, then the patient was sent to University Hospital and a diagnosis of traumatic occupational neutritis was made."

When asked concerning the kind of examination claimant was given, this witness further testified:

"This consisted of an examination of all the functions of his central nerves. The significant findings were the loss of some sensation of the tips of his fingers of his right hand, in which he had a drawing and burning sensation in his right hand. I could see no evidence of impairment of the circulation in his hand from various moves. * * * It was my feeling that he had an injury to the pain nerve ending in his fingers of his right hand from prolonged pressure."

A further excerpt from this Doctor's testimony is as follows:

"Q. In other words you mean the fact that he pushed the steel wool across the boards that caused some ——— the end of his fingers to tingle? A. The tips of the fingers were injured by pressure, just the tips.

"Q. Is there any way that these damaged nerve ends of the fingers of the right hand can be restored or repaired? A. Not that I know of. Mainly I should clarify that a little. The situation I visualize, the ends of his fingers is a result of constant trauma, there has been some scar tissue formation around the nerve ends, of course, it would be impossible to re-

move that scar tissue without also removing the nerve endings. It is possible that he might be relieved of his pain, but * * *.

"Q. By removing the tip of his finger? A. Yes, sir, but also he would lose the sensation and he may also continue to have pain, and I don't think it a procedure one could recommend too heavily."

The claimant testified that he last worked for the respondent employer in September of 1955, before he was examined by Dr. C as above related, that he has not done any work since, and is not able to. When asked on cross-examination if he had ever had an "accident", claimant's answer was: "No, sir." Dr. C gave the same answer when he was asked on cross-examination if claimant ever gave him "a history of any accident" that happened to him in either 1954 or 1955; and he reiterated that when he examined claimant he gave him a history of having "the same thing" in 1952. Dr. C further testified that pressure on any nerve will injure its function and "if continued over too long a period * * * might become erriversable." When further questioned as to the nature of claimant's injury, this Doctor stated: "The tips of his fingers were injured by the pressure, just the tips," and later revealed that he did not mean there was any injury to the finger or its skin, but just to the nerve ends. The witness also indicated his opinion that "the beginning of the thing" was when claimant began that type of work "eight years before." When asked if he could "fix any particular time in that period, as to when anything exactly occurred to him, the witness replied: "No sir, I think it was a continual process, not any one big traumatic event." It was made even plainer that claimant's injury did not occur suddenly or as the result of one particular or definite event, when claimant's attorney examined Dr. C as follows:

"Q. It is your opinion, as I understand it from your testimony, Doctor, that the condition that the claimant is suffering from at the present time, is a condition that has developed over a period of eight years, from this constant use and rubbing of the steel wool in the duty that he was required to perform, is that correct? A. Yes, sir."

When asked on cross-examination: "What is traumatic neuritis?", Dr. A replied that it is "Irritation of the nerve."

In the present proceeding for review of claimant's award, petitioners maintain that as (according to the undisputed testimony) claimant never had an accident, and his injury was not the result of any particular happening or event which occurred at one particular time or date, but came on gradually or progressively and was the cumulative effect of using steel wool as described, over a prolonged period of time, it was not an "accidental injury" within the meaning of our Workmen's Compensation Act. For their position, they rely principally on the cases of Ford Motor Co. v. Scruggs, 154 Okl. 219, 7 P.2d 479; Imperial Refining Co. v. Buck, 155 Okl. 25, 7 P.2d 908, and Wilson & Co. v. McGee, 163 Okl. 99, 21 P.2d 25. As to what constitutes an "accidental injury" within the terms of the Workmen's Compensation laws of the various jurisdictions, the courts do not appear to be in strict agreement. As to this matter, 58 Am.Jur., "Workmen's Compensation", sec. 197, is as follows:

"Ordinarily, an injury, to be accidental within the meaning of the statute, must be traceable to a definite time, place, and cause. This is the usual test for distinguishing between accident and occupational disease. But this rule does not require that the injury result from a single specific and definite occurrence, and does not preclude recovery of compensation for an injury caused by the cumulative effect of a series of minor accidents, each one of which is specific and ascertainable, although its actual contribution to the resultant injury cannot be definitely fixed. Neither does the rule

require that the time be fixed in all cases with minute or particular exactness, and in many cases it is sufficient if the approximate time is determinable. The fact that a bruise or other traumatic injury or condition develops gradually has been held in some cases not to prevent it from being regarded as accidental in character; but in other cases the contrary conclusion has been reached. A distinction has been made, in this connection, between the phrases "injury by accident" and "accidental injury," it having been held that an injury may be within the operation and meaning of such latter phrase if it occurs unexpectedly although it may not be possible to relate the time of its occurrence to any definite event or occasion."

See also the cases cited and discussed in the Annotations at 122 A.L.R. 839. Some confusion has resulted from some of this court's previous expressions concerning the term "accidental injuries" as used in our Workmen's Compensation Law, Tit. 85 O.S. 1951 § 3(7). This appears to have begun in United States Gypsum Co. v. McMichael, 146 Okl. 74, 293 P. 773, where this court held that our Workmen's Compensation Act makes "a casualty" the foundation of a claim for compensation on account of accidental injury. In the body of the opinion in that case the term "accidental injuries", as used in our Act, was treated as synonymous with injuries "by accident" on the basis of what was said in the earlier case of St. Louis Mining & Smelting Co. v. State Indus. Comm'n, 113 Okl. 179, 241 P. 170, 172, and an English Court's definition of "injury by accident" as well as the Canadian Supreme Court's definition of "accident" was included. The word "event" was used rather indiscriminately in the St. Louis Mining & Smelting Co. case, but we think that the word "casualty", as used therein, was intended to be synonymous with "injury" rather than "accident", for it was said: " * * * the basis of a claim for compensation must be a casualty oc-

curring without expectation or foresight." Certainly the quality of being unforeseen has continued to be recognized by this court as a necessary element of "accidental injury", but, since Black, Sivalls & Bryson, Inc., v. Silvey, 184 Okl. 176, 86 P.2d 327, we have abandoned the idea that "accidental injury" must be the result of "an event, the time of which can be fixed", where there is evidence tending to show that claimant's disability is caused by trauma, as distinguished from disease, or, by some external force as distinguished from a systemic reaction of internal origin. Our more recent opinions have adhered to the idea expressed in Associated Employers' Reciprocal v. State Industrial Commission, 88 Okl. 249, 212 P. 604, 606, as follows:

"Under the law it is not necessary that the claimant receive a sudden or violent injury in order to receive compensation. The term 'accident' is not used in a narrow sense. [Citing cases]

" * * * It is clear * * * that it was the intention of the law to provide compensation for an injury sustained by an injured employee while engaged in any of the hazardous occupations coming within the act, and, if such injury is sustained, it is by the act regarded as an accidental injury, unless excluded for willful injury, etc., as in the act provided, and there is no language in the act authorizing the conclusion that, as a prerequisite to the right of compensation, the claimant must show that he has suffered some injury resulting from some sudden or violent accident."

In Johnson Oil Refining Co. v. Guthrie, 167 Okl. 83, 27 P.2d 814, 815, 90 A.L.R. 616, this Court quoted from Quality Milk Products v. Linde, 159 Okl. 256, 15 P.2d 58, as follows:

" ' "The adjective 'accidental' is not a technical term but a common one, whose popular usage would not necessarily mean that the words 'accidental injuries' indicated the existence of an

accident, but rather the idea that the injury was either unintended or unexpected. See 25 Harvard Law Review, pp. 338, 342. In the term 'accidental injuries,' the substantive 'injuries' expresses the notion of the thing or event i. e. the wrong or damage done to the person; while 'accidental' qualifies and described the noun by ascribing to 'injuries' a quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally.' Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A.L.R. 363."

In Tri-State Contractors v. Althouse, 166 Okl. 296, 27 P.2d 1041, 1042, after discussing a number of cases of this, and other, courts, it was stated:

"In the last case an injury was declared to be accidental in character which resulted from inhaling gas fumes and coke dust over a period of time, *ultimately resulting on a date* that could be ascertained in a disability to a claimant."

Atlas Coal Corporation v. Scales, 198 Okl. 658, 185 P.2d 177, involved an injury to claimant's left knee "in the nature of a bruise." We incorporated in our opinion in that case the same much-quoted excerpt shown above from Quality Milk Products v. Linde, supra, and cited other cases from this and other jurisdictions, including an Indiana Case, American Maize Products Co. v. Nichiporchik, 108 Ind.App. 502, 29 N.E.2d 801, involving a hand injury from "riveting steel tanks over a period of time" and a Missouri Case, Lovell v. Williams Bros., Mo.App., 50 S.W.2d 710, involving a hand injury incurred by its constant use in digging ditches, all showing that a compensable accidental injury may be progressive or cumulative in its inception. There we upheld an award for the bruises "which *finally resulted* in the accidental injury * * *". (Emphasis ours.)

In Choctaw County v. Bateman, 208 Okl. 16, 252 P.2d 465, 467, we said:

"In Andrews Mining & Milling Co. v. Atkinson, 192 Okl. 322, 135 P.2d 960, 961, we stated:

" 'We are committed to the rule that the term "accidental injury" is not to be given a narrow or restricted meaning, but is to receive a broad and liberal construction, with a view of compensating injured employees where disabilities result from compensable personal injuries. Terminal Oil Mill Co. v. Younger, 188 Okl. 316, 108 P.2d 542; National Biscuit Co. v. Lout, 179 Okl. 259, 65 P.2d 497.

" 'An "accident" is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term "accidental injuries", the substantive *"injuries" expresses the notion of a thing or event, that is, the wrong or damage done to the person*, while "accidental" qualifies and describes the noun by ascribing to "injuries" a quality or condition of happening, or coming by chance or without design, taking place unexpectedly or unintentionally.'

\* \* \* \* \* \*

"In the Younger case, supra, we, in effect, applied the definition of 'accident' as found in Stasmas v. State Industrial Commission, supra [80 Okl. 221, 195 P. 762, 15 A.L.R. 576], and, we there concluded that it was the application of the rule which was difficult and confusing. And, so it is, if the term 'accidental injury' is not given a broad and liberal construction." (Emphasis ours.)

We think the injury in the present case, insofar as concerns the question of whether it was the result of an accident on a specific date, is similar to those involved in Atlas Coal Corp. v. Scales, supra, and Acme Material Co. v. Wheeler, Okl., 278 P.2d 234, 237. In the latter case, the claimant was

employed as a Diesel shovel operator, and operated it sitting on a seat mounted on its top. His testimony was that while so sitting and operating the shovel, he was subjected to constant jarring. He had been so employed about fifteen years. On October 8th and 9th, 1953, after some hard digging with the shovel, he got up off the seat to get a drink and felt a "catch" in his back. Nevertheless, he kept working and the pain *gradually* grew worse. After three more weeks of work, he quit when the pain in his back became severe. The claimant's injury was thereafter medically diagnosed as a degenerated fifth spine disc aggravated by the use of the power shovel. A physician reported, upon examining plaintiff November 4th, 1953: "I feel that the degenerated disc *has been there for some time,*" (Emphasis ours), and that the patient was: "not aware of any specific injury" but had a "gradual onset" of pain, following use of the shovel. This doctor's opinion that the disc condition was "of long standing" was corroborated by another physician. And, we held that the evidence was sufficient to uphold the Commission's finding that the claimant suffered an accidental injury, within the rule of previous cases cited in the opinion to the effect that such an injury may occur while an employee is doing his work in the usual manner "though nothing unusual *occurred or happened* to cause" it. This case was cited and followed in *Calhoun Construction Co. v. Sexton,* Okl., 288 P.2d 705.

We think the witnesses who testified in this case to the effect that claimant had suffered no "accident" were thinking of that term as ordinarily used, and such statements should not be considered as conflicting with other testimony by the same witnesses indicating that claimant had suffered an accidental injury. We think the injury involved here can be distinguished from those involved in cited cases of non-traumatic origin and not the result of "casualty" or external force or impact. We are also of the opinion that if, in keeping with the general policy of liberally construing our Workmen's Compensation Act, we give the term "accidental injury" the liberal construction this Court has always professed to give it, we must recognize that such an injury under said Act may be inflicted progressively and over a more or less lengthy period rather than being confined to infliction on one definite date and as the result of an isolated or particular event. In this connection, see the discussion of Aldrich v. Dole, 43 Idaho 30, 249 P. 87, 88, and Lovell v. Williams Bros., Mo.App., 50 S.W.2d 710, 713, in the Annotations, supra. As said in the first-cited case: "The statute does not restrict compensation to an injury that results from a single event * * *"; and as said in the last-cited case: "To exclude any accidental injury to an employee, arising out of and in the course of his employment, this [legislative] intention should clearly appear * * *". In this connection, notice Higgins v. Department of Labor and Industries, Wash., 180 P.2d 559, dealing with a compensation act in which "injury" is specifically defined in the Act as "sudden and tangible happening * * *". Rem.Rev.Stat. § 7675. This State's Legislature has never seen fit, by amendment of our Act, to restrict the meaning of "accidental injury" as used therein within any such narrow bounds.

In accord with the foregoing views, we hold that there was competent evidence reasonably tending to support the Commission's finding that the claimant suffered an "accidental personal injury." Having so concluded, and in the absence of any other contention of error, the award is sustained.