## STASMOS v. STATE INDUSTRIAL COMMISSION et al.

No. 11544—Opinion Filed Feb. 8, 1921.

(Syllabus by the Court.)

**1. Master and Servant—Workmen's Compensation Law—Construction.**

The Workmen's Compensation Law should be construed fairly, indeed, liberally, in favor of the employe.

**2. Same—"Injuries Arising Out of and in Course of Employment."**

Injury resulting from an assault by a workman upon a fellow workman while the latter is engaged in the work of the master is an accidental personal injury arising out of and in the course of employment within the meaning of the term as used in section 1 of the Workmen's Compensation Act.

**3. Same—Test of Liability.**

The test of liability under the Workmen's Compensation Law for injuries arising out of and in the course of employment is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority, but is the relation of the service to the injury, of the employment to the risk.

Error from State Industrial Commission.

From order of Commission refusing to award compensation for personal injuries to Adolf Stasmos, he brings error. Reversed and remanded.

J. S. Arnote, for petitioner.

S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for State Industrial Commission.

A. W. Harries, for Rock Island Coal Mining Company.

KANE, J. This is an appeal from the action of the State Industrial Commission in refusing to allow the petitioner compensation for personal injuries incurred while in the employ of the Rock Island Coal Mining Company as a miner. There is no controversy between the parties concerning the facts disclosed by the evidence, which may be briefly summarized as follows:

At the time of the injury, and for some time prior thereto, Stasmos, the petitioner, was in the employ of the Rock Island Coal Mining Company in the capacity of a coal miner. On the day of the injury he was at work in rooms 48 and 49. About 1 o'clock of that date the mine shut down, and word was sent to the miners and to the petitioner that the mine had stopped work and that it was necessary for the workmen to depart from their working places and proceed to the surface. Upon receiving these directions the petitioner with other workmen left his working place and passed up through the entries and passageways of the mine to the bottom of the shaft for the purpose of taking the cage out of the mine. While waiting at the bottom of the shaft for the cage to arrive, the petitioner asked Tom Woods, an assistant mine foreman and a fellow employe of the petitioner who was present, where the cage was, saying that he, the petitioner, wanted the cage to go out of the mine. Whereupon Woods, becoming angry, applied an ugly epithet to the petitioner, adding, "Why don't you go up the air shaft?" Upon the petitioner resenting the insult of Woods, the latter picked up a 2x4 scantling and struck petitioner over the head, knocking him down and crushing and breaking his skull so severely that he remained unconscious for some time. The cage, which was temporarily out of order, arriving shortly after the encounter, the petitioner was taken out of the mine, and from the mine to his home, from which he was taken next day to the hospital at McAlester, where he remained ten days. As the result of this injury the petitioner was unable to work for a period of about six weeks, his mind being seriously affected for a period of one month. The claim for compensation filed by the petitioner before the State Industrial Commission was denied upon the ground that the disability of the petitioner was not the result of accidental personal injury arising out of and in the course of his employment. This ruling is assigned as error. In our opinion this ground for reversal is well taken.

The part of section 1, art. 2, of the Session Laws of 1915, generally known as the Workmen's Compensation Act, necessary to notice provides as follows:

"Every employer subject to the provisions of this act shall pay or provide as required by this act compensation according to the schedules of this article for the disability of his employe resulting from an accidental personal injury sustained by the employe arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employe to bring about injury of himself or of another."

A casual reading of this section makes it fairly obvious that the petitioner's right to recover depends upon an affirmative answer to two questions: (1) Were his disabilities the result of accidental personal injuries? (2) Did they arise out of and in the course of his employment? It seems clear to us, in view of the rule of construction many times announced by this and other courts,

that the Workmen's Compensation Law should be construed fairly, indeed liberally, in favor of the injured workman, that both of these questions must be answered in the affirmative.

It is now well settled in these workmen's compensation cases that the fact that an injury is the result of the willful or criminal assault of another does not prevent the injury from being accidental. L. R. A. 1916A, 309, and notes; L. R. A. 1917D, 112; Western Indemnity Co. v. Pillsbury (Cal.) 151 Pac. 398; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 Pac. 491; Re Heitz, 218 N. Y. 148; L. R. A. 1916D, 641; Willis v. Pilot Butte Mining Company (Mont.) 190 Pac. 124; 1 C. J. 390, and cases cited.

The latter authority defines the word "accident" as follows:

"Accident, in its legal signification, is difficult to define; it is not a technical legal term with a clearly defined meaning, and is used in more senses than one. * * * The word denotes * * * an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore unexpected; chance, casualty, * * * an event happening without any human agency, or, if happening through human agency, an event which under the circumstances is unusual or unexpected by the person to whom it happens; an event which, under the circumstances, is unusual and unexpected by the person to whom it happens."

Under this definition we think the injury was accidental within the meaning of the statute. It was sudden and unlooked for, and the purpose of the act is to insure the workman at the expense of his employer against personal injury not expected or designed by the workman himself, provided such injuries arise out of and in the course of employment.

It seems equally clear to us that the facts in this case show the petitioner's injury arose out of and in the course of his employment. As we have seen from the brief statement of the case hereinbefore set out, the petitioner was in the act of leaving the mine, following the usual course of exit from his working place to the foot of the shaft for the purpose of taking the cage to the top. Tom Woods, the assistant foreman, was there directing the men, and while the test of liability under the statute is not the dereliction of the master, or that of his representative acting within the scope of his authority, it seems to us that it was entirely proper for the petitioner to complain to the mine foreman concerning the delay in the arrival of the cage.

Our statute, in so far as it provides for compensation for the "disability of an employe resulting from accidental personal injury sustained by the employe arising out of and in the course of his employment," is almost, if not identical, with the British statute upon this subject, and with the statutes of practically every state in the United States, except Washington, which has a broader, provision on the foregoing paragraph of our statute.

It is the decided weight of authority in Great Britain and the United States that an assault by a third party, or an assault of the employer arising out of and in the course of the employment, resulting in an injury and disability, is such an injury as comes within the Workmen's Compensation Law. L. R. A. 1917B, 112, and notes; Willis v. State Industrial Commission, 78 Okla. 216, 190 Pac. 92; Willis v. Pilot Butte Mining Company (Mont.) 190 Pac. 124, and many other cases.

The facts in Willis v. State Industrial Commission, supra, are somewhat similar to the case at bar. The employe, with others, had left their work and gathered around a fire to warm and were not actually at work. A fellow employe came along and voluntarily and intentionally threw a piece of split dynamite in the fire. Those around the fire were warned of the act and all ran away except the one injured, and the dynamite exploded and injured him. The Supreme Court held that Willis was entitled to recover under the compensation law of this state.

Injuries sustained by an employe of a factory from being struck by an apple which one of his fellow employes, a boy, had thrown at another in sport, and which nearly caused the loss of the entire sight of one eye, was held by the New York Court of Appeals to be an injury arising out of and in the course of his employment within the Workmen's Compensation Law, in Leonbruno v. Champlain Silk Mills, 128 N. E. 711. The injured employe was at the time engaged in the performance of his duties and had no knowledge of the horseplay. Judge Cardozo, who wrote the opinion, reviewed and distinguished a number of cases which arose in New York, and in some of the other states, as well as cases arising under the English law. In conclusion he said:

"The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such act to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute

is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

If we apply this test to the case at bar, it is obvious that the State Industrial Commission erred in denying the petitioner compensation for his disabilities.

As was said in Verschleiser v. Joseph Stern Son et al., 128 N. E. 126, another late New York case more directly in point:

"It may seem harsh and arbitrary to impose liability upon a master for an assault committed by a workman upon a co-workman, but the purpose and intent of the statute is to fix an arbitrary liability in the greater public interest involved. This legislation was to ameliorate a social condition, not to define a situation or fix a liability by an adherence to the old common law. Liability was imposed regardless of fault—vitally different from that under the common law. Injury by an employe moved by some cause aside from his regular duties, may be considered an inevitable, however undesirable, result—a risk which is incident to the employment of many persons. It is a burden which industry may well bear under this legislation."

For the reasons stated, the judgment of the State Industrial Commission is reversed, and the cause remanded, with directions to proceed in accordance with the views herein expressed.

All the Justices concur.