Note.—See under (1) 22 C. J. p 91, §29; 22 R. C. L. p. 59. (2) 4 C. J. p. 835, §2834; anno. L. R. A. 1916B, 565: 2 R. C. L. p. 203: 1 R. C. L. Supp p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (3) 29 Cyc. p. 886; 20 R. C. L. p. 292; 3 R. C. L. Supp. p. 1051; 4 R. C. L. Supp. p. 1351; 5 R. C. L. Supp. p. 1096; 6 R. C. L. Supp. p. 1202.

---

## OKLAHOMA-ARKANSAS TEL. CO. et al. v. FRIES et al.

No. 18105.    Opinion Filed Jan. 3, 1928.

(Syllabus.)

**1. Master and Servant—Workmen's Compensation Law — Injury "Arising Out of Employment."**

An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

**2. Same—Review of Awards—Conclusiveness of Findings of Fact.**

The law is now well settled in this state that, in a proceeding in this court to review an order of the State Industrial Commission, such proceeding is to review errors of law and not of fact. The finding of facts by the Industrial Commission is conclusive upon this court, and will not be reviewed by this court where there is any competent evidence in support of same.

**3. Same—Right to Compensation—Manual Laborer Engaged in Clerical Work at Time of Injury.**

Where it is shown that an employee devotes the major portion of her time to manual or mechanical labor, and is not an employee engaged as a clerical worker exclusively, as defined in section 7284, C. O. S. 1921, as amended by chapter 61, sec. 2, Sess.

Laws 1913, such employee, if otherwise entitled thereto, will be entitled to compensation even though she may have been engaged in clerical work at the immediate time of her injury.

**4. Same—Award of Compensation Sustained.**

Record examined; held, there is competent evidence to support the finding and judgment of the Commission.

Commissioners' Opinion, Division No. 1.

Action in Supreme Court by the Oklahoma-Arkansas Telephone Co. et al. to review the finding and judgment of the State Industrial Commission in entering an award in favor of the respondent, Mamie Fries.

Clayton B. Pierce and Burford, Miley & Hoffman & Burford, for petitioners.

The Attorney General, Fred Hansen, Asst. Atty. Gen., and W. H. Brown, for respondents.

LEACH, C. This action was commenced in this court by the petitioners, Oklahoma-Arkansas Telephone Company and Aetna Life Insurance Company, to review an award made to Mamie Fries by the State Industrial Commission. The Industrial Commission found "that the claimant herein was in the employment of the respondent and was engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law, and that while in the course of such employment and arising out of the same, the claimant sustained an accidental injury on the 8th day of September, 1925; that as a result of said accident claimant sustained multiple injuries and was temporarily totally disabled to the 1st day of August, 1926, * * *" and awarded claimant, Mamie Fries, the sum of $1,470.41 to cover reimbursement and expenditures by claimant for medical, surgical and hospital treatment, and compensation in the sum of $828, and continued the cause to a later date to determine extent of disability and disfigurement of claimant.

The claimant was and had been, at and prior to the date of her injury, an employee of the Oklahoma-Arkansas Telephone Company, her duties being that of auditor, bookkeeper, relief operator, to supervise and assist the switchboard operators, test the toll board and toll line to see that the switchboard was not overcharged with electricity, test lines generally, install fuses and do other small repair work in the absence of the regular repair man, and generally supervise the work of the exchange at Poteau, and three other

towns. She testified she was on duty or subject to call at all hours, and had been an employee of the company for more than ten years; that on the morning of her injury she was in the office of the company adjoining the operator's room, and had been itemizing statements; that L. E. Thrasher, who was president and general manager of the company, came into the room where she was and began assorting toll tickets; that thereafter L. E. Carmichael, who was plant superintendent, secretary and treasurer of the respondent company, came into the room, and according to the direct testimony of the claimant, the following took place:

"Q. What did Mr. Carmichael do or say, if anything, when he came in? A. He said, 'Thrasher, I would like to see you a minute.' Q. What did Thrasher say? A. He said, 'All right.' Q. Now, I want you to tell the court what was the next thing that Mr. Carmichael did? A. Well, we was in the room there and he turned and closed the general office door and bolted it and closed the door that leads into the general office into the operator's rest room and pulled that to and locked it and told Mr. Thrasher to sit down and then walked over to me and said, 'Mamie, you sit over by the stool. I want to talk to you,' and he was sitting back of the desk. * * * Q. Now, I want you to go ahead and tell the court what took place immediately after that? A. Mr. Carmichael sat down where I had gotten up from and said, 'Thrasher, what are you going to do about the business,' and he said, 'Nothing,' and Mr. Carmichael said, 'Well, I feel like I am being mistreated.' Mr. Thrasher said, 'If anybody is being mistreated I am the one,' and Mr. Carmichael reached his hand under his coat and I saw him pull a revolver, and so I jumped up and started to scream. Q. What did Carmichael do after he pulled the gun? A. Well, he went to shooting, and I went over to the corner,—around the corner, and when I got up I was bleeding from the mouth, and it was then I realized I had been hurt. * * * Q. Now, when you saw Carmichael pull the gun you jumped off the stool and ran which way? A. Ran around the corner to the left of him. Q. Where was Thasher with reference to you and the door at the time the gun was pulled? A. With reference to the rest room door you mean? Q. Yes? A. He was standing near the door. * * * Q. Do you know how many shots were fired? A. No, I don't. Q. Where were you when you first realized you were hurt? A. I had got to the end of this counter there that was in the room and crouched down under it and when I got up I was bleeding. Q. You ran around the corner of the counter and when you got up you realized you were hurt? A. Yes, sir, I was bleeding from the mouth. * * * Q. Did you see Carmichael there? A. Yes,—no, not at that minute, no, sir. Q. Did you see him after that? A. Yes, sir. Q. Where was he? A. He was about two feet from me. Q. What were you doing when you come to yourself and found yourself bleeding from the mouth? A. I looked up to see where I was. Q. Were you down on the floor? A. Yes, sir, crouched, crumpled up on the floor. Q. When you looked up and saw Carmichael, what was he doing? A. Either reloading or unloading his gun. He did this way (indicating) and then something bursted in my head, and that is the last I know. And I looked up and saw people in the office."

The testimony of the claimant was the only evidence given as to how or why the injury occurred. The physician's report shows claimant was seriously injured from a number of gunshot wounds.

The petitioners rely upon two propositions for the reversal of the award, and predicate their argument, first upon the question: "Was claimant engaged in manual or mechanical work or labor in a hazardous employment when injured?"

Section 7283, C. O. S. 1921, enumerates the occupations covered by the Workmen's Compensation Act, among such being telephone lines and plants. Section 7284, C. O. S. 1921, as amended by chapter 61. sec. 2, Sess. Laws 1923, in defining "hazardous employment" reads as follows:

"1. 'Hazardous employment' shall mean manual or mechanical work, or labor. connected with or incident to one of the industries, plants, factories, lines, occupations or trades mentioned in section 7283, except employees engaged as clerical workers exclusively, and shall not include any one engaged in agriculture, horticulture or dairy or stock raising, or in operating any railroad engaged in interstate commerce."

The 1923 Amendment (sec. 7284, Harlow's Supp. 1927) to section 7284 added the words "except employees engaged as clerical workers exclusively."

Apparently, the purpose of the amendment was to cover the class of employees who might be partly engaged in clerical work as well as manual or mechanical work or labor. The claimant here devoted the major portion or part of her time to that class of work or labor which would be termed manual or mechanical, and not clerical, and was an employee falling within the provisions and protection of the act.

The testimony of the claimant was that she had finished itemizing the statements at the time of the injury; that she had been called into conference with her superior of-

ficer and employer at the time of her injury. Even had the claimant been engaged in clerical work, as contended, at the time of her injury, we think such would not affect her right of recovery, provided she were not an exclusive clerical worker, as excepted under the definition of section 7284, C. O. S. 1921, at amended, supra. We observe no authority or decisions by either party construing the amended section of the statute, or a similar statute from another state. We consider the evidence as sustaining the Commission, in finding that the claimant was engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law, and that the first question as propounded by petitioners must be answered in the affirmative. In view of the evidence, we think the act itself as amended warrants such conclusion without the citation of authorities on that question.

The second proposition and question necessary to a proper determination of this cause, is: "Were claimant's injuries the result of an accidental personal injury arising out of and in the course of her employment?"

To answer this question it might be well to divide it into three parts. First, were claimant's injuries the result of an accidental personal injury?

It was said in the body of the opinion in the case of St. Louis Mining & Smelting Co. v. State Industrial Commission, 113 Okla. 181-182, 241 Pac. 170:

"Under our Act, section 7284, supra, 'injury' is defined to mean 'accidental injury,' and the basis of a claim for compensation must be a casualty occurring without expectation or foresight."

In the body of the opinion, in the case of Stasmos v. State Industrial Commission, 80 Okla. 222, 195 Pac. 762, it was said:

"It is now well settled in these workmen's compensation cases, that the fact that an injury is the result of the willful or criminal assault of another, does not prevent the injury from being accidental. L. R. A. 1916A, 309, and notes; L. R. A. 1917D, 112; Western Indemnity Co. v. Pillsbury (Cal.) 151 Pac. 398; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 Pac. 491; Re Heitz, 218 N. Y. 148, L. R. A. 1917A, 344, L. R. A. 1916D, 641; Willis v. Pilot Butte Mining Co. (Mont.) 190 Pac. 124; 1 C. J. 390, and cases cited."

The latter authority defines the word "accident" as follows:

"Accident, in its legal signification, is difficult to define; it is not a technical legal term with a clearly defined meaning, and is used in more senses than one. * * * The word denotes * * * an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore unexpected; chance, casualty, * * * an event happening without any human agency, or, if happening through human agency, an event which under the circumstances is unusual or unexpected by the person to whom it happens; an event which, under the circumstances, is unusual and unexpected by the person to whom it happens.'"

Under the definition and authorities above cited and quoted, and in view of the evidence, we think the injury of claimant was accidental within the meaning of the statute, provided such injuries arose out of and in the course of the employment.

Second. Did claimant's injuries arise in the course of her employment?

The general rule is that the terms "arising out of" and "in the course of" are not synonymous, but are conjunctive terms; the words "out of" referring to the origin and cause of the accident, and the words "in the course of" to the time, place and circumstances under which it occurred, it being almost universally held that an accident may be in the course of employment, and yet not arising out of the employment. In order that a recovery may be had both conditions must exist. Ryan v. State Industrial Commission, 128 Okla. 25, 261 Pac. 181; Lucky-Kidd Mining Co. v. State Industrial Commission, 110 Okla. 27, 236 Pac. 600; Honnold's Workmen's Compensation, vol. 2, sec. 101.

The claimant at the time she received her injury was in the office of the petitioner at the place her work was to be performed. It was during the hours of her employment, and from the record, she was performing, or waiting to perform, such acts and duties as might be required of her under her employment. The record, we think, amply supports the finding of the Commission that her injury arose in the course of her employment.

The third and more difficult question to be determined is, Whether or not the injuries of the claimant arose out of her employment?

The State Industrial Commission, which was created with a view and for the purpose of determining primarily the questions arising in this case, has answered the question in the affirmative, and if there is any competent evidence to support such finding, it must be sustained. The evidence on the question of what brought about or caused the injury, to our mind, is rather meager;

however, the claimant testified, upon cross-examination, that the plant manager, secretary-treasurer of the petitioner telephone company, when he came into the room where the claimant was, directed her to sit down at a certain place in the room, and said, "Mr. Thrasher, I would like to see you all a minute," and further said, "What are you going to do about the business?" and when the president of the telephone company said, "Nothing," then the other further said: "Well, I feel like I am being mistreated," and Thrasher replied, "If anyone is being mistreated, I am the one," and then the shooting began, and from the record it is quite evident that the claimant was not injured by stray shots that were directed at another, but apparently by shots directed at her.

Upon cross-examination, the claimant was asked the question:

"Had there been any previous * * * had there been anything said previous, previous to that day?" and she answered: "Oh, yes, about three days before. Q. Had there been any quarrel between Mr. Carmichael and Mr. Thrasher previous to that time that you had heard or know about? A. Not that I heard—not that I had heard."

The record affords no satisfactory answer as to why the officer of the respondent company saw fit to commit the atrocious assault upon the claimant. However, just prior to the shooting, the officer of petitioner company fastened the doors of the office and stated that he desired to see the claimant and the other party present a few minutes, and made inquiry about the business, and stated: "I think I am being mistreated." The business referred to or discussed, so far as the record shows, or the reasonable inference therefrom, appears to have been the business of the respondent company, the business of the company in which the three participants were engaged as officers and employees. We might guess or surmise that the injury was suffered by some fact or condition not connected with or growing out of the company's business or employment, arising from something personal between the assailant and the one assaulted, but we find no testimony referring or pointing to anything other than the company's business or employment upon which to base such surmise.

The McNicol Case (Mass.) 102 N. E. 697, is referred to and quoted with approval by this court in the case of Lucky-Kidd Mining Co. v. State Industrial Commission, 110 Okla. 27, 236 Pac. 600, and in other cases from this court. The McNicol Case arose under Workmen's Compensation Act, and was to recover compensation for death of employee who was shot by another employee. We quote from the body of the opinion as follows:

"It (the injury) arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

This court, in the case of Stasmos v. Industrial Commission, 80 Okla. 221, 195 Pac. 762, supra, reversed the judgment of the Industrial Commission, and directed an award to the claimant who had been assaulted and injured by a superior employee of the company. Under the authority of that case, and other cases therein cited, if the assault and injury in the case at bar arose out of the employment, then claimant was entitled to recover. It was said in the Stasmos Case, supra:

"The Workmen's Compensation Law should be construed fairly, indeed, liberally, in favor of the employee.

"As to whether an injury arose out of and in the course of the employment is a question of fact to be determined by the Industrial Commission under the facts and circumstances of each particular case. Superior Smokeless Coal & Mining Co. v. Hise, 89 Okla. 70, 213 Pac. 303. Also Sapulpa Refining Co. v. State Industrial Commission, 91 Okla. 53, 215 Pac. 933; Marland Ref. Co. v. Colbaugh, 110 Okla. 283, 238 Pac. 831."

The Industrial Commission concluded and found that the injury to claimant here arose out of and in the course of the employment. Reasonable men might have reached a dif-

ferent conclusion than that reached by the Industrial Commission, but we are unable to say that other reasonable men would not reach the same conclusion and finding as the Commission, as was said, in effect, in the case of Wick v. Gunn, 66 Okla. 316, 169 Pac. 1087.

The evidence, as stated, we consider somewhat meager, yet we think there is some competent evidence to support the entire finding of the Commission.

"The law is now well settled in this state that, in a proceeding in this court to review an order of the State Industrial Commission, such proceeding is to review errors of law and not of fact. The finding of facts by the Industrial Commission is conclusive upon this court, and will not be reviewed by this court where there is any competent evidence in support of same." Thomas v. Ford Motor Co., 114 Okla. 3, 242 Pac. 765.

We therefore conclude and hold that the judgment of the Commission should be, and is hereby affirmed.

BENNETT, TEEHEE, JEFFREY, and HERR, Commissioners, concur.

By the Court: It is so ordered.