Shirley RICHEY, Claimant,

v.

COMMANDER MILLS, INC., Respondent,
Mid-Continent Casualty Company,
Insurance Carrier.

No. 46336.

Supreme Court of Oklahoma.

April 16, 1974.

Pearson, Caldwell & Green by Don Pearson, Muskogee, for claimant.

Whitten, McDaniel & Osmond by James N. Khourie, Tulsa, for respondent and insurance carrier.

LAVENDER, Justice:

Claim for compensation alleged occurrence of an accidental back injury while engaged in covered employment. Petitioners, hereafter designated respondents, answered admitting facts of injury, and that medical attention had been furnished and temporary compensation paid, but denied any permanent partial disability had resulted from injury. Respondents later filed amended answer denying claimant's injury arose out of and in course of employment.

Upon hearing, parties stipulated essential facts, including payment of temporary compensation to June 17, 1972, and the case was heard upon the issue of whether claimant's injury was compensable. The trial court determined claimant had suffered accidental injury arising from and in course of employment and entered a 300 week order for temporary total disability. Respondents also were ordered to pay reasonable and necessary medical expenses incurred after August 7, 1972, including charges of named physicians and hospital charges arising from self-procured medical attention.

Issues presented for review arise from an uninvolved factual background. Claimant was employed as a machine operator in respondent's garment factory. In the work area, approximately 25 feet from claimant, there was a soft drink machine accessible to all employees as a convenience. Another work table had been installed in the work area between claimant's machine and near the drink dispenser. The work performed at this table resulted in garment trimmings covering the floor in the area customarily traveled by employees.

Claimant's work day began at 7:00 A.M., a 10 minute "coffee break" was permitted, and claimant's 30 minute lunch period was at 11:30 A.M. Employees were not compelled to eat in the plant, but could remain inside using plant facilities which included places to sit and access to the drink dispenser. When the lunch period began, claimant left her machine and went toward the dispenser to secure a bottled drink. About half way to the machine she slipped on garment clippings covering the floor and fell, striking the coccyx area and injuring her back. The following day claimant commenced a course of medical treatment which will be discussed hereafter.

Respondent's principal contention urges claimant's injury cannot be compensable because not arising out of and in course of employment. Both parties discuss the ap-

plicability of the "indirect benefit" principle to the issue of whether the injury arose out of and in course of employment.

It is axiomatic that compensable injury must arise within time and space limitations of employment, and also within the course of activity related to employment. An employee's activity is work related if the employer's purposes are being carried out, or the employer's interests are being directly or indirectly advanced. This principle is the foundation for the doctrine that work-connected activity reaches beyond the direct services performed and includes ministrations to the personal comfort and needs of employees. For example, with respect to the status of an employee while he is eating his lunch on the employer's premises, some courts have reasoned that food is essential to continued labor, and that an employee, in refreshing himself by eating during the lunch hour, is doing that which is a necessary incident of his employment. 53 Am.Jur.2d, Master and Servant, § 185.

This theory has provided basis for concluding that injury occurring during course of an unpaid lunch period on the employer's premises comes within course of the employment. 76 A.L.R.2d, Anno.: Servant —Injury Outside Working Hours, § 8[a], p. 1239. Similarly, it has been reasoned that if an injury which occurs while going to and from work on the premises is conpensable, then an injury going to and from lunch on the premises is covered. Thus, if going to and from lunch on the premises is within course of employment, then remaining on the premises and eating lunch must be within the employment. 1 Larson, Workmen's Compensation Law, §§ 15.50 & 20.21, and cases cited.

The principle is not new. An early English case, Blovelt v. Sawyer, 1 K.B. (1904) 271 announced the principle. A workman paid by the hour, but not including meal time, could take his meal on the premises, or go elsewhere as he chose. The workman sat down to eat his meal on the premises and was injured by a falling wall.

The court held the eating period did not break the employment, since the mere fact the employee was not paid for the time, and while eating was not engaged in main purpose of the work, did not create a cessation of the employment, since it was to the employer's advantage that employees have the opportunity to eat and thereby perform their work all the better.

Archibald v. Ott, 77 W.Va. 448, 87 S.E. 791, L.R.A.1916D, 1013, states the reason for the rule:

"* * * Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work.

"* * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment."

This court early recognized the principle that an injury which occurred during non-work activity permitted for confort and convenience of employees, could arise out of and in course of employment. Willis v. State Industrial Court (1920), 78 Okl. 216, 190 P. 92.

Although recognizing existence and effect of the principle of indirect benefit, respondents insist the principle was rejected in Hegwood v. Pittman, etc. (1970), Okl., 471 P.2d 888. Further, they urge that whether injury occurs on or off the premises is not a controlling factor, which is true, but then they cite Wilson & Co. v. Worley (1972), Okl., 499 P.2d 438, for the proposition that the true test is whether

the employee is actively engaged in the employer's work at the time of injury. Actually, in Worley it was said that whether the accident occurred off the premises of the employer is a factor to be considered in determining whether the claimant was engaged in work for the employer at the time of the injury. Immediately following that statement, the opinion noted that the accident occurred during the lunch hour while the claimant was eating; he was not performing any work arising out of or in the course of his employment; his activities were solely for his own benefit and pleasure; he was eating his lunch on his own time; and he picked up a salt shaker and struck it on a bench, breaking it and injuring his hand. The conclusion was that he was not entitled to recover Workmen's Compensation benefits. Thus, the Worley case does not have to be, and should not be read as a rejection of the indirect benefit principle. The assumption in Worley that we rejected the indirect benefit principle in Hegwood is not controlling.

Nor should the decision in Hegwood be construed as rejecting the theory of indirect benefit. Although that decision approached the problem from a standpoint of personal convenience, review of the case will disclose that the problem actually arose out of deviation from course of employment for a purely personal mission. And, more importantly, our decision specifically excepted acts necessary for personal convenience and comfort from other non-work related acts held to be outside the course of employment. In Hegwood, the claimant left employment upon a strictly personal mission in no way connected with any necessity arising from her employment. The same was true in the two other supporting cases cited in Worley. Novak v. McAlister (1956), Okl., 301 P.2d 234; City of Tulsa v. Morrison (1957), Okl., 312 P. 2d 886. Criticism of the indirect benefit principle found in Hegwood is just that, nothing more.

■ But the matter of whether claimant's injury is compensable because it does or does not arise out of and in the course of her employment is not determined on the indirect benefit principle. We have commented on that principle solely because the parties have raised it. Pertinent here is the syllabus statement by this court in Novak v. McAlister, supra, that, "An injury does not arise out of the employment within the meaning of the Workmen's Compensation Law of this state, unless it results from a risk reasonably incident to the employment, and unless there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." The converse is, of course, true, and, in our view, the claimant comes within it. She was still within her general work area when she fell, and her fall was due to work conditions in that area. Her injury thus resulted from a risk reasonably incident to her employment and arose "out of the claimant's employment"—such phrase pertaining to the origin and cause of the injury. We are also equally certain that it arose "within the course of her employment"—referring to time, place, and circumstances of the injury. This is because the employee was rightfully upon the respondent's property while in the act of leaving her immediate work area. This is enough to establish this latter requirement. Belscot Family Center v. Sapcut (1973), Okl., 509 P.2d 905. It is true that there may be an indirect benefit principle applicable to the injury of this employee during her unpaid lunch hour because of the location of the drink dispenser placed in the work area approximately 25 feet from claimant for use of all employees for convenience, and toward which the claimant had started by the normal route when she slipped on items on the floor as a result of work efforts by a fellow employee, but it is unnecessary to so determine. The claimant came directly within the principles indicated in Novak v. McAlister, supra, and Belscot Family Center v. Sapcut, supra, and the injury is compensable. See also Max

E. Landry, Inc. v. Treadway (1966), Okl., 421 P.2d 829, wherein it was stated:

"It is generally held that an injury sustained by an employee while going to or from his work occurring on the premises owned or controlled by his employer, is deemed to have arisen out of and in the course of his employment. (Citing cases)"

Respondents also attack propriety of the trial court's order awarding medical expenses. Two complaints are raised concerning this part of the award. The first claim insists claimant arbitrarily refused to continue medical treatment which respondents provided, and therefore is not entitled to payment for self-procured medical expenses.

Following injury claimant first sought attention from a chiropractor, and then began treatment under respondents' physicians on April 6, 1972. This included medication, wearing lumbosacral support, and other conservative measures, including physiotherapy and eventual hospitalization for performance of myelogram. This test revealed no neurological symptoms and, as of May 24th, claimant was reported as suffering from musculoligamentous strain which should subside without residual disability. While still hospitalized claimant was referred to an orthopedic surgeon (Dr. D.) who initiated a program of concentrated, conservative physical therapy. The necessity for indulging painful exercise was less than appealing, and was one apparent source of claimant's dissatisfaction with Dr. D.

This, coupled with claimant's feeling that lack of regular attention affected her condition, led claimant to procure medical discharge on June 11, 1972, from the hospital and Dr. D. Claimant then again sought attention from respondents' physicians (Drs. I. and Dr. M.) who had provided earlier treatment. These physicians declined to accept claimant again as a patient. On August 8, 1972, claimant sought treatment from Dr. Mn., who determined claimant's symptoms warranted surgical intervention.

On September 9, 1972, Drs. B. & Mn. performed laminectomy and spinal fusion, being of the opinion emergency treatment was indicated and necessary. When the case was heard, claimant testified there no longer was pain and discomfort and she felt much better, although not yet released from treatment.

■ Having furnished medical attention, required by 85 O.S.1971 § 14, respondents take the position claimant's refusal to continue treatment under Dr. D. was arbitrary and unreasonable. And, since there was no evidence this medical treatment was inadequate, charges for medical treatment procured by claimant were unauthorized and respondents cannot be liable therefor. Without question, under § 14, supra, respondents had both the duty and the right to select the treating physician. Questions as to sufficiency of, or necessity for, other or additional medical treatment, present questions of fact for the State Industrial Court.

■ Facts presently disclosed are very similar to those reflected in Kerr McGee Corp. v. Croley (1973) Okl., 508 P.2d 1066. In that case we approved payment of charges for self-procured medical treatment where evidence showed extensive treatment from doctors selected by respondents had been unavailing. Clearly a claimant is not at liberty to abandon respondents' physicians and procure other medical attention solely for personal reasons. However, when treatment upon basis of examination and diagnosis by respondents' physicians does not alleviate conditions resulting from injury, the State Industrial Court properly may require respondents to assume responsibility for expenses of self-procured medical services rendered upon determination that an emergency existed. Whether an operation is reasonably necessary is a question of fact to be resolved by the State Industrial Court. Orrick Stone Co. v. Jeffries (1971), Okl., 488 P.2d 1243. Similarly, whether emergency treatment was required presented a question of fact to be solved

**810**

by the Industrial Court, and the issues were resolved in claimant's favor and are not to be disturbed when supported by competent evidence, as we believe they are.

■ Respondents' contention the trial court lacked authority to order payment of medical expenses incurred by claimant is correct. Liability for expenses of medical care is controlled by § 14, supra, and authority to approve claims for services is. limited to conditions specified. Sapulpa Tank Co. v. Cole (1963), Okl., 386 P.2d 988. No claims were presented showing charges for medical attention allowed by the trial court, and no evidence was tendered to establish reasonableness of those charges. There was nothing before the court relative to the issue of medical costs, and the attempted adjudication was unauthorized and invalid. Sapulpa Tank Co. v. Cole, supra; Quality Materials Co. v. Payne (1965), Okl., 405 P.2d 51.

The award of compensation for temporary total disability is sustained. The award in respect to payment of medical expenses is vacated, with directions same be heard and determined after further hearing.

All of the Justices concur.