**DARCO TRANSPORTATION and State Insurance Fund, Petitioners,**

v.

**Elmer O. DULEN and The Workers' Compensation Court, Respondents.**

No. 84374.

Supreme Court of Oklahoma.

April 2, 1996.

Rehearing Denied Sept. 13, 1996.

Kelly M. Greenough, Robert Highsaw, State Insurance Fund, Tulsa, for Petitioners.

Matthew J. Graves, John S. Oldfield, Oldfield & Coker, Oklahoma City, for Respondents.

OPALA, Justice.

The answers to two questions are dispositive of whether Dulen's [employee or claimant] injuries are compensable under Oklahoma's workers' compensation regime. The pertinent queries are: (1) Had the claimant abandoned his employment when he was injured? and (2) Is the risk of being struck by a train at a railroad crossing purely personal or does it have a causal connection with, so as to arise out of, Dulen's employment with Darco Transportation [Darco or employer]?

We answer the first question in the negative and the latter in the affirmative.

## I

### THE ANATOMY OF LITIGATION

Dulen was injured when a tractor-trailer rig, which he was driving, entered a railroad crossing and was struck by an oncoming train. Dulen and Polly Freeman [Freeman], his co-driver, were hired by Darco to transport goods cross-country. On the night of September 7, 1993 Dulen stopped his rig behind another truck (also a Darco rig) when the signal arms at a railroad crossing lowered. The arms malfunctioned and came up before the train had reached the intersection. The first Darco truck proceeded across the tracks and Dulen followed. While the first truck avoided being hit, the claimant's rig was rammed by the train. The record discloses that the protective arms did not relower until Dulen's semi was on the tracks.

Freeman died as a result of the accident and Dulen was severely hurt. At the scene of the collision a female traffic investigator (with the local police department) noticed that Freeman, who was clad only in a T-shirt, sustained physical injuries primarily to the right side of her body. She observed that Dulen's pants were unbuttoned, unzipped and resting mid-hip when he was readied for transportation to the hospital. Her report also reflects that the passenger door on Dulen's rig was intact but the driver-side windshield and door were knocked out.

Apart from the investigating officer's report and testimony, there was other evidence about Dulen and Freeman's attire on the night of the accident. It shows that on occasion male truck drivers, when on long hauls, do unbutton their pants for comfort's sake.[1]

There was also testimony that the claimant's rig was equipped with a sleeping facility and that Freeman, when travelling, *slept* only in a T-shirt.[2]

After Dulen was admitted to the hospital, the investigator approached him there for information to complete a supplemental accident report. The officer questioned the claimant—then in apparent shock and suffering from lacerations and fractures of the face, jaw and body—about how the accident had happened. She noted in her report that Dulen said, "I was fucking her and now, oh, my God, I have killed her." [3] According to the officer, Dulen told her that, when the accident occurred, Freeman was sitting in his lap facing him.

In later testimony Dulen explained that—by his earlier statement at the hospital—he meant that he had been living in an intimate relationship with Freeman for five months before the accident and felt responsible for her death because she was driving with him.[4] He denied telling the officer that Freeman, when killed, was sitting in his lap and that they were having sex. Other evidence before the trial tribunal reveals that there was not enough room between the steering wheel and the seat for two people (of Dulen and Freeman's size) physically to fill that space together.

The trial judge *found* the claimant's injuries (1) occurred in the course of and arose out of his employment and (2) *resulted directly* from the railroad-crossing arms' malfunction.[5] Dulen appealed to secure temporary total disability. After reviewing the record, a three-judge panel modified the trial tribunal's order by awarding temporary total disability and setting a counsel fee. The employer appealed; the Court of Appeals

---

1. *See* the testimony of Chester Cooper, the employer's operations manager. Dulen also testified that this was his habit. (Tr. at 7, 26, and 33.)

2. *The accident occurred shortly after midnight.* (Tr. at 32.)

3. Tr., Claimant's Ex. 10 at 37.

4. Tr. at 25 and 40.

5. By her April 5, 1994 order, the trial judge found that the "direct cause" of the claimant's injury was a malfunction of the protective equipment at the railroad crossing, which, if in proper condition, would have stopped traffic from proceeding across the tracks when a train was approaching.

sustained the three-judge panel's order. Employer's certiorari quest followed.

## II

### THE STANDARD OF REVIEW

When examining the compensation tribunal's factual resolutions, this court applies the *any-competent-evidence standard.*[6] *Whenever conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is* not one of law but rather *of fact.*[7] The trial judge's non-jurisdictional *findings* may not be disturbed on review if supported by competent proof.[8] Any evidence in the record, on the basis of which the trier could have reached a contrary conclusion, is of no legal effect in the process of reviewing a workers' compensation court's findings.[9] It is *only in the absence of competent evidence*[10] that a trial tribunal's decision may

be viewed as erroneous *as a matter of law* and hence subject to appellate vacation.[11]

## III

### BECAUSE THERE IS COMPETENT EVIDENCE TO SUPPORT THE FINDING THAT THE CLAIMANT'S INJURY (A) *OCCURRED IN THE COURSE OF* AND (B) *AROSE OUT OF* HIS EMPLOYMENT, IT IS COMPENSABLE UNDER THE LAW

Oklahoma's jurisprudence has long recognized that a compensable work-related injury must *both* (1) occur *in the course of*[12] and (2) *arise out of*[13] the worker's employment.[14] 85 O.S.1991 § 3(7).[15] These two distinct elements *are not to be understood as synonymous.*[16]

**6.** 85 O.S.1991 § 26; *Benning v. Pennwell Pub. Co.,* Okl., 885 P.2d 652, 654 (1994); *Owings v. Pool Well Service,* Okl., 843 P.2d 380, 382–383 (1992); *Lacy v. Schlumberger Well Service,* Okl., 839 P.2d 157, 160 (1992); *York v. Burgess–Norton Mfg. Co.,* Okl., 803 P.2d 697, 699 (1990); *Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 549 (1984); *Graves v. Safeway Stores, Inc.,* Okl., 653 P.2d 1236, 1238 (1982); *Standish Pipe Line Co. v. Kirkland,* 188 Okl. 248, 107 P.2d 1024, 1025 (1940); *Barnes v. Indian Territory Illuminating Co.,* 170 Okl. 520, 41 P.2d 633, 635 (1935).

**7.** *Thomas v. Keith Hensel Optical Labs,* Okl., 653 P.2d 201, 203 (1982); *Flick v. Crouch,* Okl., 434 P.2d 256, 260–61 (1967).

**8.** Controlling language in 85 O.S.1991 § 26 clearly provides that "[t]he decision of the *Court* [Workers' Compensation Court] shall be final as to all *questions of fact,* and except as provided in ... [§ 3.6], as to all questions of law." [Emphasis added.]
 *Benning, supra* note 6 at 654–55; *Parks, supra* note 6 at 551–52; *Carpenter v. Douglas Aircraft Company,* Okl., 420 P.2d 911, 912 syl. 2 (1966); *Leffler v. McPherson Brothers Transport,* Okl., 396 P.2d 491, 493 (1964); *Eagle–Picher Company v. McGuire,* Okl., 307 P.2d 145, 148 (1957).

**9.** *Iwunoh v. Maremont Corp.,* Okl., 692 P.2d 548, 549 (1984); *Matter of Death of Sade,* 649 P.2d 538, 540 (1982).

**10.** "Competency" refers to the *legal sufficiency* of the admitted evidence to support the decision. In applying the any-competent-evidence standard, it is not this court's duty to weigh the adduced evidence but simply to canvass the facts to determine if the tribunal's decision is supported by *competent evidence. Lacy v. Schlum-*

berger, Okl., 839 P.2d 157, 160–61 (1992). *See also Parks, supra* note 6 at 552.

**11.** *Parks, supra* note 6 at 552; *Chromalloy–American, Oklahoma Division v. Wright,* Okl., 567 P.2d 71, 73 (1977).

**12.** The term *"in the course of* employment" relates to the time, place or circumstances under which the injury is sustained. *Hensel, supra* note 7 at 202; *R.J. Allison v. Boling,* 192 Okl. 213, 134 P.2d 980, 982 (1943).

**13.** The term *"arise out of* employment" contemplates the *causal connection* between the injury and the risks incident to employment. *American Management Systems, Inc. v. Burns,* Okl., 903 P.2d 288, 291 (1995); *Hensel, supra* note 7 at 202; *Richey v. Commander Mills, Inc.,* Okl., 521 P.2d 805, 808 (1974); *Graham v. Graham,* Okl., 390 P.2d 892, 893 (1964); *Stanolind Pipe Line Co. v. Davis,* 173 Okl. 190, 47 P.2d 163, 164 (1935).

**14.** *Hensel, supra* note 7 at 202; *Richey, supra* 13 at 807; *Hegwood v. Pittman,* Okl., 471 P.2d 888, 891 (1970); *Graham, supra* note 13 at 893; *Royster v. McCoy,* Okl., 293 P.2d 587, 588 (1956).

**15.** The pertinent terms of 85 O.S.1991 § 3(7) make compensable "... only accidental injuries arising out of and in the course of employment.... *Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."* [Emphasis added.]

**16.** *Burns, supra* note 13 at 291.

## A

*EVEN THOUGH CONFLICTING INFER-ENCES* MAY BE DRAWN FROM THE ADDUCED EVIDENCE UPON THE DEFENSE OF *HORSEPLAY,* THE COMPENSATION TRIBUNAL'S FACTUAL FINDINGS THAT (A) DU-LEN, WHEN INJURED, HAD *NOT* ABANDONED HIS MASTER'S WORK AND (B) HIS INJURY OC-CURRED IN THE COURSE OF HIS EMPLOYMENT MAY NOT BE DIS-TURBED ON REVIEW

■ We must be mindful that in this case we are applying *workers' compensation law.*[17] The concept of a worker's *contributory fault,* which the compensation statute discarded, must not—under the guise of appellate re-examination of the evidence—be resurrected obliquely as a defense against the employer's liability.

■ The Workers' Compensation Court was faced with the task of determining if Dulen, when injured, was performing work in furtherance of his master's business—*i.e.,* whether he was then "in the course of em-ployment." More precisely stated, *if* the trial tribunal tended to believe that Dulen and Freeman were having sex at the critical time, the question to be decided was whether the claimant's conduct is to be deemed horse-play—*a complete departure from or aban-donment of his employment.*[18] The issue so formed, which is one of fact, concerns itself *solely* with the "course of employment" bounds—not with the risk incident to em-ployment, *i.e.,* the "arising out of" element.[19]

■ *Assuming* as a fact that—when the collision occurred—Dulen was having sex *while also driving the rig,* the trial judge could still find that this servant's acts consti-tuted no more than a careless, negligent or forbidden genre of performance but did not amount to *pure* frolic which, under the cir-cumstances, was tantamount to *total* aban-donment of the master's business. On this record, such a finding would not be legally or factually incorrect. Both the terms of 85 O.S.1991 § 12[20] and Oklahoma's jurispru-dence bar *contributory negligence* as a de-fense against the claim.[21] The text of 85 O.S.1991 § 11[22] clearly provides that an inju-

---

17. Oklahoma first enacted workers' compensa-tion law in 1915. 1915 Okla.Sess.Laws Ch. 246, p. 574. The act abolished the employee's com-mon-law negligence action against the master and its corollary defenses of contributory negli-gence and assumption of the risk. *See Adams v. Iten Biscuit Co.,* 63 Okl. 52, 162 P. 938, 940–41 (1917). Modern workers' compensation statutes remove the element of fault as a baseline require-ment for ascribing liability for work-connected injuries and replace it with the concept of strict responsibility. For a discussion of strict liabili-ty's historical development, see Palmer, *A Gener-al Theory of the Inner Structure of Strict Liability: Common Law, Civil Law, and Comparative Law,* 62 Tul.L.Rev. 1303–1355 (1988).

18. For an explanation of the elements of horse-play, see 1A A. Larson, The Law of Workmen's Compensation, §§ 23.30 and 23.61 (1995).

19. For an elucidation of what the phrase "in the course of employment" covers, see *supra* note 7. *See also* 1A A. Larson, The Law of Workmen's Compensation §§ 23 *et seq.* (1995), where in dis-cussing *horseplay* he observed:

"Much of the difficulty in the current contro-versy over *horseplay* cases is the result of con-fusing the 'course of employment' and 'arising out of employment' issues, with a general but mistaken tendency to assume the latter is the principal issue.

Whenever the basic controversy stems from the nature of a course of conduct deliberately undertaken *by* the claimant, there is primarily a question of course of conduct. Whenever the controversy stems from the nature of a source of injury *to* the claimant, there is primarily a question of 'arising out of the employment'." *Id.* at § 23.61.

20. The pertinent terms of 85 O.S.1991 § 12 pro-vide:

"... [A]n injured employee ... may maintain an action ... on account of such injury, and ... the defendant may not plead or prove as a defense ... that the injury was due to the contributory negligence of the employee...."

21. *See Fegett v. Berts Texaco Service Station,* Okl., 495 P.2d 1277, 1278 (1972); *Crutchfield v. Bogle,* Okl., 270 P.2d 640, 642 (1954). For a discussion of fault in the workers' compensation regime, see *supra* note 17.

22. The pertinent terms of 85 O.S.1991 § 11 are:

"Every employer ... shall pay ... for the disability or death of his employee' resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, *without regard to fault as a cause of such injury*...." [Empha-sis added.]

ry *is compensable "without regard to fault"* on the worker's part. The record contains ample evidence reasonably supporting the notion that claimant's injury was *work-related,*[23] *i.e.,* occurred *while he was en route* to his assigned destination.[24] Above all, *uncontroverted is the stubborn fact that Dulen, when injured, occupied his assigned work station—the driver's seat behind the steering wheel of Darco's truck.*[25] The record offers *no* proof that Dulen had deviated from or abandoned his master's mission (transporting goods to San Francisco).[26]

The law's outer framework—unchanged since the very inception of this court's compensation jurisprudence—strongly militates in this case against withholding compensation benefits for misconduct *that plainly falls short of workstation abandonment*[27]—regardless of how morally reprehensible the worker's on-the-job carelessness might have been.

## B

## THE RISK OF INJURY BY TRAIN WHILE MOTORING FOR THE MASTER IS CONNECTED WITH DULEN'S EMPLOYMENT AS A TRUCK DRIVER

 An injury is compensable if it *arises out of* the claimant's employment—*i.e.,* was caused by a risk to which the employee was subjected by his work.[28] Any other notion would impermissibly interject into this State's compensation regime concepts of common-law cause and foreseeability (the legal underpinnings of negligence).[29] The *only* criterion for compensability is the statute's test of a bifurcated *connection-in-fact to the employment.* With the enactment of the Workers' Compensation Act in 1915, the servant's *culpability has been eliminated* as a defense against the master's liability.[30]

 The record, which reflects several witnesses' testimony that the railroad-crossing equipment malfunctioned, is *devoid of any proof* that the protective arms were in good working order. The trial tribunal found the equipment's failure was the direct cause of the claimant's injuries. Its finding rests on competent evidence. At the time of Dulen's injuries, he was employed as a Darco truck driver with an assigned task—that of transporting goods to the West Coast. This required his presence on the highways. A causal connection between the act in which Dulen was engaged, when injured, and his job description is clear.[31] Because the perils of this servant's travel for his master are co-extensive with the risks of employment, Dulen's injuries undeniably *arose out of* his work.

**23.** An employee's activity is *"work related"* if the employer's purposes are being advanced, either directly or indirectly. *Richey, supra* note 13 at 807.

**24.** Darco's operations manager (Chester Cooper) testified that, at the time of the accident, the claimant was properly en route to his assigned destination.

**25.** There is *not* a scintilla of evidence that during the critical time in question Dulen was ever away from his assigned work station.

**26.** Oklahoma's jurisprudence does not allow compensation for injuries to a servant who deviated from an assigned destination on a personal errand. *See Breckenridge v. Bray Lines,* Okl., 782 P.2d 909, 910 (1989); *Anderson v. Allis–Chalmers Manufacturing Company,* Okl., 387 P.2d 479, 482 (1963). The record offers cogent proof that the claimant's work task created the necessity for travel and that he was following an accepted path to reach his assigned destination.

**27.** The record contains conflicting proof of Dulen and Freeman's conduct. There is competent evidence to support the trial judge's finding that Dulen was injured in the course of his employment (and implicitly that he had not abandoned, at the time of the accident, his master's mission to pursue sexual intercourse).

**28.** *Burns, supra* note 13 at 291; *Hensel, supra* note 7 at 202; *Graham v. Graham,* Okl., 390 P.2d 892, 893 (1964); *Davis, supra* note 13, 47 P.2d at 164. *See also supra* note 22 for the pertinent terms of 85 O.S.1991 § 11.

**29.** For a general discussion of the relationship between the "arising out of" and proximate-cause concepts, see 1A A. Larson, THE LAW OF WORKMEN'S COMPENSATION § 6.60 (1995).

**30.** For the history of Oklahoma's workers' compensation law, see *supra* note 17.

**31.** *See Hensel, supra* note 7 at 203; *Richey, supra* note 13 at 807; *Davis, supra* note 13, 47 P.2d at 164.

## IV

## SUMMARY

When conflicting inferences may be drawn from undisputed facts, the controversy presents a fact question. There is competent evidence to support the trial tribunal's decision that Dulen's injuries were caused by the railroad-crossing equipment's malfunction. Two insuperable hurdles absolutely militate against overturning the trial tribunal's findings and exonerating the employer as a matter of law. Assuming Dulen and Freeman, at the critical temporal point, were engaged in sexual intercourse, (1) there is *undisputed proof* that, when the collision occurred, Dulen remained at the steering wheel and hence cannot be deemed to have then "abandoned" his assigned work station and (2) there is competent evidence to support the trial judge's finding which ascribes the accident's cause, *not to copulation-related inattention, but to defective railroad-crossing warning equipment.* A disposition that would deny Dulen's claim, as the dissent appears to champion, could result only from this court's *original and legally unauthorized* change in the trial tribunal's finding which would declare Dulen guilty of *contributory* fault—a defense which is explicitly withheld by the provisions of 85 O.S.1991 § 11 from the master's arsenal of weapons.[32] On certiorari previously granted,

THE OPINION OF THE COURT OF APPEALS IS VACATED AND THE ORDER OF THE THREE–JUDGE PANEL SUSTAINED.

ALMA WILSON, C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

KAUGER, V.C.J., and HODGES, SUMMERS and WATT, JJ., dissent.

WATT, J., with whom KAUGER, V.C.J., HODGES and SUMMERS, JJ. join, dissenting:

Today's opinion sustains an award of workers' compensation benefits to a claimant for injuries sustained while engaging in sexual intercourse. I cannot accede to the majority's decision. It is my opinion that the claim-ant's activities at the time of his accident constituted a form of "horseplay" not covered by the Workers' Compensation Act. By engaging in sexual intercourse, the claimant transformed his otherwise legitimate work-related conduct into conduct that did not "aris[e] out of ... his employment" within the meaning of 85 O.S.1991 § 11. Accordingly, I believe that the trial court erred as a matter of law in awarding claimant workers' compensation benefits.

Additional facts not mentioned by the majority include the following. On the night of the accident, claimant and his co-driver/girlfriend, Polly Freeman, were driving through California in a convoy with another company truck. When the other truck went the wrong way at an intersection, claimant pulled his rig to the side of the road and waited several minutes for the other truck to rejoin him. The record does not reveal the activities of claimant and his girlfriend during that time period. When the other truck returned to the correct course, claimant pulled in behind and followed. The accident occurred minutes later at a railroad crossing in the town of Shaftner, California.

When claimant's rig was struck by the train, Freeman was thrown from the cab and fatally crushed by claimant's truck. Claimant suffered the injuries for which he now seeks workers' compensation benefits. The investigating officer, Shaftner Police Officer Mary Beechie, testified that she discovered claimant just minutes after the accident standing outside his truck with his pants unzipped and pushed down to "about mid-hip." The officer testified that Freeman was clad only in a T-shirt. All of the physical evidence indicated that Freeman was sitting on claimant's lap facing him at the time of impact and that Freeman was thrown from the driver's side of the cab during the collision. As stated by the majority, the passenger-side door of the rig was completely intact and the driver-side door and windshield were knocked out. Other evidence established that strands of Freeman's hair were found on the top of the driver's side door frame and

---

**32.** For the pertinent terms of 85 O.S.1991 § 11, see *supra* note 22.

that Freeman suffered lacerations only on the right side of her body.

Moreover, claimant admitted that he and Freeman were having sexual intercourse at the time of the accident. The full text of claimant's admissions are set forth in the majority opinion. Officer Beechie testified that claimant gave her those statements at the hospital some three hours after the accident occurred. Although claimant appeared to be distraught at that time, Officer Beechie testified that he was alert, coherent and appropriately responsive to her questions and the questions of hospital personnel. Those admissions, coupled with the physical evidence, make inescapable the conclusion that claimant and his passenger were engaged in sexual intercourse at the time of the accident.

Title 85 O.S.Supp.1994 § 26 provides that a decision of the Workers' Compensation Court "shall be final as to all questions of fact." I am also aware that this Court must employ the "any-competent-evidence" standard when reviewing Workers' Compensation Court decisions regarding non-jurisdictional questions of fact.[1] However, the trial court in this case made no specific factual findings regarding whether claimant was engaged in sexual intercourse at the time of the accident. Therefore, we are free to weigh the evidence regarding this issue on certiorari review. In so doing, I assign no credibility to claimant's reflective, self-serving trial testimony in which he recanted his earlier statements regarding sexual intercourse.

Even if we were required to apply the "any-competent-evidence" standard in reviewing the issue here, I do not believe that this Court is obliged to mechanically apply any test which would compel us to affirm an unjust, irrational or absurd lower court decision. In drafting § 26, the legislature directed that all decisions of the Workers' Compensation Court regarding factual issues are final. We have interpreted that provision to mean that all such decisions are final if supported by any competent evidence. However, we must presume that the legislature did not intend any interpretation of § 26 would

lead to an absurd result. *See TXO Production Corp. v. Oklahoma Corp. Comm'n,* 829 P.2d 964, 969 (Okla.1992). Thus, we are required to avoid any construction of § 26 that would lead to an absurdity if such can be done without violating legislative intent. *Id.* As detailed below, the result reached by the Workers' Compensation Court here is erroneous as a matter of law. Any perfunctory application of a standard of review that forces us to affirm such an absurd decision must be avoided. No technical rule of review should ever be used by this Court to sanction a gross miscarriage of justice.

Under the provisions of the Workers' Compensation Act, 85 O.S.1991 § 11, compensation is payable to an injured worker only for disability "resulting from an accidental personal injury sustained by the employee *arising out of and in the course of his employment....*" (emphasis added).[2] *See* also *Matter of Death of May,* 586 P.2d 738, 740 (Okla.1978). The phrases "arising out of the employment" and "arising in the course of the employment" are not synonymous; "arising out of the employment" refers to origin and cause, while "arising in the course of the employment" refers to time, place and circumstances. *Liebmann Arctic Ice Co. v. Henderson,* 486 P.2d 739, 742 (Okla.1971); *Midland Co-Operative Wholesale v. Brown,* 207 Okla. 441, 250 P.2d 34, 35 (1952). "As a practical matter, it may be said that in the vast majority of cases, if the injury arises out of the employment, it also arises in the course of the employment, but the opposite is not necessarily true." *Liebmann,* 486 P.2d at 742. *Accord Willis v. State Indus. Comm'n,* 78 Okla. 216, 190 P. 92 (1920).

An injury is considered to have been received "in the course of the employment" when it was sustained while the worker was doing the duty which he was employed to perform. *Hegwood v. Pittman,* 471 P.2d 888, 891 (Okla.1970). It is readily apparent in this case that claimant's injuries arose *in the course of his employment.* He was driving a company truck on a routine route and trans-

---

1. *Garrison v. Bechtel Corp.,* 889 P.2d 273, 278 (Okla.1995). *See also Parks v. Norman Mun. Hosp.,* 684 P.2d 548 (Okla.1984).

2. The quoted language is now found at 85 O.S.Supp.1993 § 11(A).

porting goods for his employer at his employer's behest. At the time of the accident claimant was, in fact, engaged in doing the duties which he was employed to perform. However, as the foregoing precedent makes clear, that fact alone does not necessarily mean that claimant's injuries *arose out of his employment.*

An injury is considered to have "arisen out of the employment" only if (1) there is a causal connection between the conditions under which the work was required to be performed and the resulting injury, and (2) the injury resulted from a risk reasonably incident to the employment. *Decker v. Oklahoma State Univ.,* 766 P.2d 1371, 1374–75 (Okla.1988); *Liebmann,* 486 P.2d at 742; 85 O.S.1991 § 3(7). A compensable injury "need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and have flowed from that source as a rational consequence." *Town of Granite v. Kidwell,* 263 P.2d 184, 186 (Okla. 1953), quoting *Oklahoma–Arkansas Tel. Co. v. Fries,* 128 Okla. 295, 262 P. 1062 (1928). *Accord In re Loague,* 450 P.2d 492, 496 (Okla.1969); *Novak v. McAlister,* 301 P.2d 234, 236 (Okla.1956).

Inherent in any job that requires travel is the risk that an employee will become involved in an accident. Injuries sustained by an employee during such mishaps are generally compensable, even when the accident is caused by the employee's own negligence or carelessness. *Fegett v. Berts Texaco Serv. Station,* 495 P.2d 1277, 1278 (Okla.1972); 85 O.S.Supp.1993 §§ 11(A), 12. Further, where a worker is injured during a prank or horseplay *in which the worker did not actively participate,* the injury is deemed to have arisen out of the employment so as to be compensable. *J.C. Hamilton Co. v. Bickel,* 174 Okla. 32, 49 P.2d 1065 (1935). *See also Willis v. State Indus. Comm'n,* 78 Okla. 216, 190 P. 92, 94 (1920) (worker who is a victim of another's prank should not be denied compensation). Whether claimant was negligent or careless at the time of his accident is not an issue in this proceeding. Nor is this Court faced with a situation where claimant was injured during horseplay in which he did not actively participate. This case presents a situation where claimant was injured while actively participating in sexual intercourse, which I deem to be the legal equivalent of "horseplay," "fooling," "frolic," "skylarking" or "play" indulged in for an employee's own amusement. By his own admission the night of the accident, self-serving trial testimony notwithstanding, claimant was engaged in a frolic of his own at the time of the accident.

In *Terry Motor Co. v. Mixon,* 350 P.2d 953, 955 (Okla.1960), we held that "an injury sustained as the result of play indulged in by an employee for his own amusement does not arise out of the employment, and any disability resulting therefrom is not compensable." *Terry* cited with approval 99 C.J.S. § 225, which states:

> Under what is apparently the majority view, an injury to an employee as a result of sportive acts of coemployees, horseplay, or skylarking is not compensable as not arising out of the employment where the injured employee was a participant, initiator, or instigator.

*Terry,* 350 P.2d at 955–56. In *Eagle–Picher Co. v. McGuire,* 307 P.2d 145, 147 (Okla. 1957), we referred to 13 A.L.R. 540 where a parallel sentiment was announced:

> It is generally held that no compensation is recoverable under the Workmen's Compensation Acts, for injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts.

This Court has similarly held that "injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duties of the employment ... do[ ] not arise out of the employment within the meaning of the Act[ ]." *Eagle–Picher Mining & Smelting Co. v. Davison,* 192 Okla. 13, 132 P.2d 937, 939 (1942), citing *Horn v. Broadway Garage,* 186 Okla. 535, 99 P.2d 150, 151 (1940). *Accord Willis,* 190 P. at 94.

Sustaining an injury while engaged in sexual intercourse is not the type of risk reasonably incident to driving a semi tractor-trailer

rig. Claimant's employer neither condoned such acts nor could it have derived any benefit therefrom. Claimant's willing participation in such non-work-related activities were independent of and completely disconnected from the performance of any duties of his job as a truck driver. As such, his injuries did not "arise out of his employment" within the meaning of the Act and are not compensable.

It is my opinion that claimant's willing participation in sexual intercourse does not fall within the category of compensable activities contemplated by Oklahoma's workers' compensation regime. Thus, I believe the trial court erred as a matter of law in awarding claimant disability benefits. I would reverse the order of the Workers' Compensation Court and remanded the case with directions to enter judgment for petitioners, thereby denying claimant's plea for disability benefits.